UNITED STATES of America, Appellee,

v.

Nelson GUERRERO,
Defendant–Appellant,

Cesar Rivera and Anthony
Medina, Defendants.

No. 158, Docket 88–1198.

United States Court of Appeals,
Second Circuit.

Argued Oct. 3, 1988.

Decided Dec. 12, 1988.

Richard Ware Levitt, New York City, for defendant-appellant.

David C. James, Asst. U.S. Atty., Brooklyn, N.Y. (Andrew J. Maloney, U.S. Atty., Kevin O'Regan, Asst. U.S. Atty., on the brief), for appellee.

Before FEINBERG, Chief Judge, NEWMAN and GARTH,* Circuit Judges.

JON O. NEWMAN, Circuit Judge:

This appeal presents two issues concerning the application of the Sentencing Guidelines. One, likely to recur in the future, is whether a sentencing judge may depart upward from a guideline range because of the amount of narcotics involved, notwithstanding the fact that the United States Sentencing Commission has established a hierarchy of guideline ranges scaled in relation to narcotic quantities. A preliminary issue, pertinent only to offenses committed during the interval between November 1, 1987, and January 15, 1988, is whether the appropriate guideline range for a narcotics offense is to be determined solely by the quantity of narcotics handled on the day of the offense or may be determined by the amount of narcotics involved in the defendant's overall scheme. These issues arise on an appeal by Nelson Guerrero from a judgment of the District Court for the Eastern District of New York (Jack B. Weinstein, Judge) convicting him, upon his guilty plea, of distributing heroin, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) (1982 & Supp. IV 1986). Guerrero's sentence includes a prison term of sixty-three months. We conclude that the sentence is valid and therefore affirm.

## Facts

The indictment charged Guerrero, Cesar Rivera, and others with conspiracy (count 1) and the substantive offense (count 2) of distributing more than 100 grams of heroin on December 11, 1987, and Guerrero alone with distributing an unspecified quantity of a Schedule I narcotic drug on December 4, 1988 (count 3). Pursuant to a plea agreement, Guerrero pled guilty to count 3, and the Government dismissed counts 1 and 2 as to him. At his plea allocution, Guerrero acknowledged that he had obtained a small sample of heroin from Rivera and that on December 4 he had given it to a person he believed was interested in purchasing narcotics. The "purchaser" was in fact a Government informant.

The plea agreement included no agreement as to the ultimate sentence to be imposed, see Fed.R.Crim.P. 11(e)(1)(C), but the prosecutor did agree that the defendant "should receive two points off for remorse and two points off for minimum participation in the deal." Plea Transcript at 13. This was a reference to a reduction from the base offense level of two levels for "acceptance of personal responsibility," pursuant to section 3E1.1(a) of the Guidelines, and two further levels for being "a minor participant" in the "criminal activity," pursuant to section 3B1.2 of the Guidelines. See United States Sentencing Commission, *Sentencing Guidelines and Policy Statements* (1987) (hereafter "Sentencing Guidelines").

Prior to sentencing, the prosecutor and defense counsel entered into a stipulation of facts to obviate the need for a *Fatico* hearing to establish circumstances pertinent to sentencing. See *United States v. Fatico*, 579 F.2d 707 (2d Cir.1978). The stipulation disclosed that Guerrero had held a series of conversations with the informant in which arrangements were made to have Guerrero introduce the informant to a potential supplier of heroin and to have the informant pick up from Guerrero a sample of heroin furnished by the supplier. Guerrero also acknowledged that he knew the informant intended to buy an additional quantity of heroin from the supplier. Finally, Guerrero admitted that he introduced Rivera to the informant on December 9 and remained present during a conversation in which the informant and Rivera negotiated a sale of heroin. The sale, made on December 11, involved 698 grams of heroin.

At sentencing, the defendant maintained that the appropriate base offense level was 12, which is the level prescribed for narcotics offenses involving less than five grams of heroin. Sentencing Guidelines § 2D1.1 Drug Quantity Table. The defendant then urged a two-level discount for acceptance of responsibility, yielding a final offense level of 10. Maintaining his position that

* The Honorable Leonard I. Garth of the Third Circuit, sitting by designation.

he had been convicted only of the isolated sale of the three gram sample and not the dismissed charges concerning the sale by Rivera and others of more than 100 grams, Guerrero did not urge the District Judge to enforce the prosecutor's agreement to make a further two-level reduction for being a minor participant in a criminal activity. For an offense level of 10, the guideline range for Criminal History Category I, which concededly applied to Guerrero, is six to twelve months.

The prosecution, supported by the probation officer, contended that the base offense level should be determined from the quantity involved in the overall scheme in which Guerrero was a participant. That level, they urged, was 28, the level specified for narcotics offenses involving between 400 and 699 grams of heroin.[1] The prosecutor then subtracted two levels for acceptance of responsibility and two more levels for being a minor participant, yielding a final offense level of 24. The guideline range for that offense level and Criminal History Category I is fifty-one to sixty-three months.

Judge Weinstein accepted the defendant's contention that the appropriate offense level was 10 (six to twelve months), but elected to depart upward because of the defendant's involvement in the total scheme, of which the sample distribution was a part:

I am departing upward because in this district a person who does what this defendant does is critical to the drug industry. He had repeated contacts in connection with the prospective sale of very large amounts. He knew that his role was that of assisting in selling very large amounts. He was not just a small street seller. He was a critical link in this process.

Sentencing Transcript at 10–11. The Judge then initially selected a sentence of sixty-five months and a fine of $200,000. Upon defense counsel's objection that this was two months more than the sentence Rivera had received, Judge Weinstein reduced the sentence to sixty-three months. After further argument concerning the fine, Judge Weinstein concluded that the amount of the fine should be reduced to $55,000. He explained that he believed the defendant was worth "at least" that amount, Sentencing Transcript at 14, and he also concluded, as explained in a subsequent written memorandum, that it was "highly probable that all of [Guerrero's] assets resulted from the drug trade." Memorandum of May 25, 1988, at 3. The sentence also included a five-year term of supervised release and a $50 assessment.

Discussion

I. The Applicable Guideline Range

The dispute concerning the applicable guideline range requires interpretation of sections 1B1.2 and 1B1.3 of the Sentencing Guidelines as they existed prior to amendment on January 15, 1988. As issued by the Commission on April 13, 1987, applicable to offenses committed after November 1, 1987, section 1B1.2 provided:

(a) The court shall apply the guideline in Chapter Two (Offense Conduct) most applicable to the offense of conviction. *Provided*, however, in the case of conviction by a plea of guilty or *nolo contendere* containing a stipulation that specifically establishes a more serious offense than the offense of conviction, the court shall apply the guideline in such chapter most applicable to the stipulated offense.

(b) *The court shall determine any applicable specific offense characteristic, victim-related adjustment, or departure from the guidelines attributable to offense conduct, according to the principles in § 1B1.3 (Relevant Conduct).*

Section 1B1.3, prior to amendment on January 15, 1988, provided that "all conduct ... relevant to the offense of conviction shall be taken into account" in determining "the seriousness of the offense conduct" and further provided that:

---

1. The prosecution, agreeing with the probation officer, placed Guerrero in the 400–699 gram quantity range because of his role in distributing the .47 gram sample and in thereby aiding and abetting the subsequent distribution of 698 grams.

conduct ... relevant to the offense of conviction means: acts or omissions ... aided and abetted by the defendant ... that (1) are part of the same course of conduct, or a common scheme or plan, as the offense of conviction....

The Government contends that the District Judge should have selected the base offense level applicable to the totality of the conduct in which Guerrero participated, not simply his distribution of a small sample of heroin on December 4, 1988. This contention implicates the major controversy that occupied much of the attention of the Sentencing Commission during its consideration of the initial set of guidelines: whether a guideline should be selected according to a defendant's so-called "real offense"— what he did—or only according to the so-called "charge offense"—the offense for which he was convicted. As the Commission acknowledges, it initially sought to develop a " 'real offense system,' " then "experimented with a 'modified real offense system' " in its September 1986 preliminary draft and finally "moved closer to a 'charge offense' system" in its January 1987 Revised Draft and in the April 1987 version, which became effective on November 1, 1987. *See* Sentencing Guidelines ch. 1, pt. A, § 4(a), at p. 1.5. But, as the Commission also acknowledges, "The system [reflected in the November 1, 1987, Guidelines] is not, however, pure; it has a number of real elements." *Id.*

▮ The Government's first argument in support of the "real offense" guideline range is based on the proviso in section 1B1.2(a). This proviso requires application of the guideline applicable to the "stipulated offense" where a plea of guilty contains a stipulation "that specifically establishes a more serious offense than the offense of conviction." In the Government's view, the stipulation between the prosecutor and the defense counsel, entered into to obviate fact-finding at the sentencing hearing, invokes this proviso. We disagree. The proviso applies only to a stipulation contained in a plea of guilty or nolo contendere, not to a stipulation negotiated after a plea in connection with sentencing. The

distinction has significance. Prior to plea, the prosecution has the opportunity to condition its willingness to accept a plea to less than all counts of an indictment on the defendant's willingness to stipulate that he committed crimes in addition to those to which he is pleading guilty. In offering to reduce the defendant's maximum exposure to the penalties in the conviction counts, the prosecution is entitled to extract an admission of facts that may justify a substantial sentence within that maximum. But once the Government agrees to a plea bargain without extracting such an admission, facts admitted by the defendant to shorten or obviate a sentencing hearing do not establish a "stipulated offense" within the meaning of section 1B1.2(a). The extent to which such facts may nevertheless establish "relevant conduct" within the meaning of section 1B1.3 or provide grounds for a departure above the guideline applicable to the offense of conviction are matters to which we now turn.

The Government's second argument for applying the base offense level for quantities between 499 and 700 grams is more substantial. Endorsing the argument that the probation officer made to Judge Weinstein, the Government contends that where, as here, the pertinent offense guideline contains multiple base offense levels, section 1B1.2 permits the "relevant conduct" standards of section 1B1.3 to be used to select the appropriate base offense level. These standards, the argument continues, permit the sentencing judge to consider Guerrero's role in the overall drug transaction as "relevant conduct." The question before us is whether the versions of sections 1B1.2 and 1B1.3 in force at the time of Guerrero's offense authorize the approach urged by the Government. To assess the merits of the Government's argument, we consider it in the context of the evolution of sections 1B1.2 and 1B1.3, and the related commentaries, beginning with the initial versions issued on April 13, 1987, continuing through the commentary revision of October 1987, and culminating in the guideline revision issued on January 15, 1988.

The initial version of section 1B1.2 and the pertinent language of the initial version of section 1B1.3 have been set out above. Section 1B1.2(a) obliges the court to select the guideline "most applicable to the offense of conviction." Section 1B1.2(b) instructs the court to apply the principles of section 1B1.3 in determining (a) specific offense characteristics, (b) victim-related adjustments, and (c) departures attributable to offense conduct. Reference to section 1B1.3 is not required in order to determine a base offense level within a multi-level guideline; on the other hand, the listing of three purposes for consulting section 1B1.3 is not necessarily exclusive and does not preclude its use for the purpose urged by the Government in this case. Section 1B1.3 itself specifies that "all conduct ... relevant to the offense shall be taken into account" in determining the "seriousness of the offense."

■ In October 1987, the Commission revised the commentary to section 1B1.2 by adding the following:

> Where there is more than one base offense level within a particular guideline, the determination of the applicable base offense level is treated in the same manner as a determination of a specific offense characteristic. Accordingly, the "relevant conduct" criteria of § 1B1.3 are to be used....

United States Sentencing Commission, Guidelines Manual pp. 1.16–1.17 (October 1987), *as amended*, 52 Fed.Reg. 44,682 (1987). On January 15, 1988, the Commission revised the text of section 1B1.2 to make explicit the point made in the October 1987 revision to the commentary. First, "guideline" in the first line of section 1B1.-2(a) was changed to "offense guideline section." Then section 1B1.2(b) was deleted and replaced with the following:

> After determining the appropriate offense guideline section pursuant to subsection (a) of this section, determine the applicable guideline range in accordance with § 1B1.3 (Relevant Conduct).

United States Sentencing Commission, *Guidelines Manual* § 1B.2(b), at p. 1.15 (1988) (hereafter "Guidelines Manual"), *as amended*, 53 Fed.Reg. 128 (1988). Thus, as of January 15, 1988, the position urged by the Government was clearly in effect. Under these explicit instructions, a Judge sentencing a person in Guerrero's circumstances would begin to select the applicable guideline by locating in the statutory index of the Guidelines Manual the "offense guideline section" pertinent to the statutory offense to which Guerrero pled guilty. For 21 U.S.C. §§ 841(a), (b)(1)(C), that "offense guideline section" is section 2D1.1. Having located this section, the judge would then notice that it contains several base offense levels and then, as instructed in section 1B1.2(b), would refer to section 1B1.3 to select the appropriate base offense level. Section 1B1.3, as revised on January 15, 1988, provides that "the base offense level where the guideline specifies more than one base offense level" shall be determined on the basis of several factors, including "all acts ... aided and abetted by the defendant ... that were part of the same course of conduct or common scheme or plan as the offense of conviction." Guidelines Manual § 1B1.3(a)(1), (2), *as amended*, 53 Fed.Reg. 1286, 1287 (1988).[2] The January 15, 1988, commentary to section 1B1.3 explains that "in a drug distribution case, quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction." Guidelines Manual at 1.19, *as amended*, 53 Fed. Reg. 1288 (1988). Since the distribution of the 698 grams on December 11 was part of the common scheme that included distribution of the sample on December 4, it would be appropriate to consider the December 11 quantity to be "relevant conduct," which would require application of base offense level 28, the level applicable to quantities of heroin between 400 and 699 grams.

---

**2.** Section 1B1.3(a)(2) applies the "common scheme or plan" language to offenses listed in section 3D1.2, which includes offenses covered by section 2D1.1 (drug offenses). *See* Guidelines Manual § 3D1.2(d).

Guerrero does not dispute that the above analysis would apply had he committed his offense after January 15, 1988. His point is that the guideline in force on December 4 did not permit use of "relevant conduct" to select a base offense level within a multi-level guideline. He further argues that to the extent that the October 1987 commentary to section 1B1.2 sought to require such a result, it was a substantive change that could not validly be accomplished without amendment of the operative language of the guideline itself. We disagree.

Initially, we note that when the Sentencing Commission issued the revised commentary to section 1B1.2 in October 1987, it stated that the revisions "are intended solely to enhance understanding and clarity and are not intended to make substantive changes in the application of the guidelines." 52 Fed.Reg. 44,647 (1987). Similarly, when the text of section 1B1.2 was amended on January 15, 1988, the Commission stated that the change was to "clarify the operation of the guidelines." 53 Fed. Reg. 1287 (1988). Though these statements cannot be accepted as conclusive, a result that would enable the Commission to make substantive changes in the guise of "clarification," the Commission's view of its purpose in revising its guidelines and commentary is entitled to considerable deference.

█ More significantly, we agree with the Commission that its change in the commentary to section 1B1.2 and the later change in the language of that guideline only clarify a meaning that was fairly to be drawn from the original version. The original version of section 1B1.2 instructed a sentencing judge to select the guideline most applicable to the "offense of conviction." For Guerrero, that offense was distributing a controlled substance, an offense defined by 21 U.S.C. § 841(a)(1). The sentencing judge was entitled by the terms of section 1B1.2 to look to section 1B1.3 to determine the seriousness of the offense for the purpose of applying the Sentencing Guidelines, and that section instructed him to consider acts that are part of a common scheme as "conduct relevant to the offense of conviction" for purposes of determining the seriousness of that offense. Sentencing Guidelines § 1B1.3.

By pleading guilty to conduct occurring only on December 4, Guerrero secured a plea bargain that resulted in dismissal of the December 11 charges concerning a quantity of heroin in excess of 100 grams and thereby limited his maximum possible sentence to 20 years, as provided by section 841(b)(1)(C), instead of the 40 years provided by section 841(b)(1)(B)(i). But in selecting a sentence within the maximum limit of 20 years, the sentencing judge was directed by the Sentencing Guidelines to select a guideline range based on Guerrero's "relevant conduct," as that term is defined in section 1B1.3.

As the probation officer and the prosecutor contended, the applicable base offense level for Guerrero was 28 because of the quantity of heroin involved in his overall scheme. With a two-level reduction for acceptance of responsibility and a further two-level reduction for being a minor participant in that scheme, the correct base offense level was 24. The appropriate guideline range was therefore fifty-one to sixty-three months, and the sixty-three month sentence was therefore proper under the Guidelines.

## II. The Upward Departure

Even if, contrary to our conclusion, the appropriate base offense level for Guerrero was 12, the level for an offense involving less than five grams of heroin, it was not unreasonable for the sentencing judge to make an upward departure from the guideline range of six to twelve months and select a sentence of sixty-three months in light of the large quantity of narcotics in the ultimate transaction that Guerrero admitted he had facilitated. We recently examined the departure authority of a sentencing judge under the Guidelines in *United States v. Correa–Vargas*, 860 F.2d 35 (2d Cir.1988). We there upheld an upward departure above the guideline range specified for the offense of using a telephone in the commission of a drug offense. 21 U.S. C. § 843(b) (1982). The departure was

based on the large quantity of narcotics involved.

Guerrero's situation is arguably different from Correa–Vargas' because, unlike the guideline for distributing narcotics, section 2D1.1(a)(3), the guideline for a telephone drug offense, section 2D1.6, does not include a range of base levels that correlate with the quantity of drugs involved. Because of this difference, Guerrero contends that the Sentencing Commission has already taken into account drug quantities in setting the base offense levels for distribution offenses and, he argues, quantity may therefore not be used as the basis for an upward departure. As he points out, a departure is permitted only if the sentencing court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. § 3553(b) (Supp. IV 1986).

■ Guerrero's point would have more force if we were faced with a sentence that had been imposed under the post-January 15, 1988, revision of the Guidelines, that is, if the sentencing judge had done what we concluded in Point I he should have done and selected a base offense level from the drug quantity table that correlated with the total amount of drugs in the ultimate transaction. If the judge had selected a guideline range of fifty-one to sixty-three months based on the 698 grams involved in the December 11 transaction, we would doubt that this same quantity could be used to justify a departure above that range. But where, as in this case, a judge selects a guideline range that is not based on all the relevant conduct of the defendant, it is not "unreasonable," which is our standard of review, 18 U.S.C. § 3742(d)(3) (Supp. IV 1986), for the judge to depart above that range because of relevant conduct established at a hearing or admitted by the defendant.

We have considered Guerrero's other contentions, including his challenge to the amount of the fine,[3] and conclude that they lack merit.

The judgment of the District Court is affirmed.

---

**3.** Because the statutory maximum fine for Guerrero's offense, $1,000,000, 21 U.S.C. § 841(b)(1)(C) (Supp. IV 1986), exceeds $250,- 000, the guidelines provide that the maximum guideline fine is the same as the statutory maximum. *See* Guidelines Manual § 5E4.2(c)(4).