**UNITED STATES of America, Appellee,**

v.

**Jose Javier FERNANDEZ and Jorge Cole, Defendants.**

**Appeal of Jose Javier FERNANDEZ, Defendant.**

**No. 719, Docket 88–1409.**

United States Court of Appeals, Second Circuit.

Argued March 3, 1989.

Decided June 15, 1989.

Bernard Greenbaum, Brooklyn, N.Y., for defendants.

Gregory J. O'Connell, Asst. U.S. Atty., Brooklyn, N.Y. (Andrew J. Maloney, U.S. Atty., E.D.N.Y., John Gleeson, Asst. U.S. Atty., Brooklyn, N.Y., of counsel), for appellee.

Before PIERCE and ALTIMARI, Circuit Judges, and KELLEHER, District Judge.*

PIERCE, Circuit Judge:

Jose Fernandez appeals from a sentence entered in the United States District Court for the Eastern District of New York (Costantino, *Judge*), following a judgment of conviction on appellant's plea of guilty to one count of importing more than 500 grams of cocaine. 21 U.S.C. §§ 952(a), 960(a)(1), 960(b)(2)(B)(ii); 18 U.S.C. § 2. On appeal, Fernandez raises a number of challenges to the district court's interpretation and application of the Sentencing Guidelines. Appellant argues that the district court erred by calculating his sentence under the Guidelines based upon the full quantity of cocaine seized from him, to wit, 25 kilograms, rather than upon the smaller amount, 500 grams, that appellant admitted upon his guilty plea to having imported. Appellant also argues that the government's attorney and the court wrongly failed to inform him at the time of his guilty plea that the Guidelines sentencing range would be calculated based upon the larger amount of contraband; thus, argues appellant, he was unfairly surprised when it subsequently became apparent that his sentence would be based upon the larger quantity. Finally, appellant urges that the Sentencing Guidelines violate the due process clause because they foreclose individualized sentencing. For the reasons stated below, we affirm.

---

* Hon. Robert J. Kelleher, District Judge, United States District Court for the Central District of California, sitting by designation.

## BACKGROUND

On December 26, 1987, appellant was arrested in the Customs area at John F. Kennedy International Airport, in New York City, as he arrived from Panama carrying two suitcases found to contain approximately 25 kilograms of cocaine. His co-defendant, Jorge Luis Cole, was also found to be in possession of narcotics and was arrested at the same time. Both Fernandez and Cole were subsequently indicted on the following three counts: (1) conspiring to import, (2) importing, and (3) possessing with intent to distribute, more than 5 kilograms of cocaine.

Although appellant initially pleaded not guilty to the charges against him, he decided thereafter to enter into a plea agreement with the government, which was negotiated by his attorney and the government's attorney. The government agreed to drop the conspiracy and possession counts in return for the appellant's plea of guilty to the importation count, which the government agreed to reduce to a charge of importing in excess of 500 grams of cocaine. This reduction in charges meant that appellant faced substantially lower statutory minimum and maximum sentences than if he had pleaded guilty to the unamended count 2, which charged importation of an amount in excess of five kilograms of cocaine. The government also agreed to ask the sentencing court to depart downward from the applicable Guidelines sentencing range if the appellant cooperated with the government's investigation.

At a hearing held before Judge Costantino on February 24, 1988, the government disclosed the details of the plea agreement. The government then moved, with appellant's consent, to have the amount set forth in the importation count reduced from 25 kilograms to in excess of 500 grams of cocaine. The district judge granted this request, and then reviewed the plea agreement with the appellant. As part of that review, Judge Costantino made it clear to appellant that, under the amended charge, he would face a minimum prison sentence of five years and a possible maximum prison sentence of forty years.

Before accepting his plea of guilty, the court reviewed the facts of the offense with appellant, as required by Federal Rule of Criminal Procedure 11(f). This review concluded with appellant's admission that he had knowingly imported 500 grams of narcotics into the United States:

THE COURT: What did you have in your possession at the airport.

THE DEFENDANT: Two suitcases of controlled substance, cocaine.

. . . .

THE COURT: So would it be fair to say that you knowingly and intentionally imported the substance into the United States?

THE DEFENDANT: Yes.

. . . .

THE COURT: And is that your full involvement as far as carrying in 500 grams of cocaine into the United States?

THE DEFENDANT: There is no other involvement, no.

Addressing the court in the presence of appellant and his counsel, the government's attorney noted that the sentence was governed by the Sentencing Guidelines, and that a probation officer would, in his presentence report, calculate the sentence required by the Guidelines. Judge Costantino then formally accepted appellant's plea of guilty, and set a date for sentence.

The presentence report was submitted to the district court approximately two months later. The report calculated the Guidelines sentencing range by using an offense level based upon the full amount of cocaine seized from appellant—approximately 25 kilograms—not the 500 grams specified in the count to which appellant pleaded guilty.

Appellant's sentence was calculated pursuant to section 2D1.1 of the Guidelines, which governs unlawful trafficking in drugs. Section 2D1.1 sets forth matching hierarchies of offense levels vis-a-vis drugs, with higher offense levels corresponding to larger amounts of contraband. *See* United States Sentencing Commission,

*Guidelines Manual* § 2D1.1 [hereinafter *Guidelines Manual*], promulgated pursuant to the Sentencing Reform Act of 1984, Pub.L. No. 98–473, 98 Stat. 1987 (codified as amended in scattered sections of 18 & 28 U.S.C.). In order to determine the appropriate offense level under section 2D1.1, section 1B1.3 requires that the sentencing court weigh all "acts and omissions that were part of the same course of conduct," including "quantities and types of drugs not specified in the count of conviction ... if they were part of the same course of conduct." *Guidelines Manual, supra,* § 1B1.3 & background commentary. The offense level relevant to 25 kilograms of cocaine (level 34) was reduced by 2 levels due to appellant's minor role in the offense, and by another 2 levels due to appellant's acceptance of responsibility in the offense, resulting in a final offense level of 30. *See id.* §§ 3B1.2, 3E1.1. Appellant had no relevant criminal history, so the Guidelines sentencing range for appellant, at level 30, was 97–121 months. *Id.* ch. 5, pt. A; *see also United States v. Wright*, 873 F.2d 437, 439–40 (1st Cir.1989) (outlining step-by-step calculation of Guidelines sentence).

Despite his apparent surprise at the presentence report's computation of his sentence, appellant did not move to withdraw his plea. *See generally* Fed.R.Crim.P. 32(d). Both before and during the sentencing hearing, however, defense counsel vigorously contested the use in the presentence report of the full 25 kilograms of cocaine to determine the applicable Guidelines sentence. Had the district court used 500 grams of cocaine as the starting point for calculating the sentence, the applicable offense level would have been 26, *see Guidelines Manual, supra,* § 2D1.1, and this presumably would have been reduced by the same 4 levels for appellant's minor role and acceptance of responsibility, leading to a final level of 22, and a sentencing range of 41–51 months, *id.* ch. 5, pt. A. As the government's attorney noted, however, the existence of the 25 kilograms of cocaine was, in the context of the case as a whole, essentially undisputed. The district judge decided to accept the approach used in the presentence report, noting that the court

preferred to "stay within the guidelines." Granting the government's subsequent motion to depart downward from the Guidelines because of appellant's cooperation, Judge Costantino did reduce the sentence to 80 months, *see Guidelines Manual, supra,* § 5K1.1, with life supervisory release and a $50 fine.

## DISCUSSION

### I. Determining the Guidelines Sentencing Range

On appeal, appellant argues that the district court erred in using the full 25 kilograms of cocaine to calculate the offense level (level 34) from which the sentence was ultimately derived. In appellant's view, only the quantity of 500 grams —the amount he admitted importing— should have been used in calculating the Guidelines sentence. A similar argument, however, has already been rejected by this court. *See United States v. Guerrero*, 863 F.2d 245 (2d Cir.1988); *see also United States v. Paulino*, 873 F.2d 23, 24–25 (2d Cir.1989) (per curiam).

In *Guerrero* the defendant, as part of a plea agreement, pleaded guilty to a lesser charge. He claimed on appeal that his Guidelines sentence should have been based upon the offense for which he was charged and convicted (upon the "charge offense," in other words), *see Guerrero,* 863 F.2d at 247–48, rather than upon the facts of the actual offense (known as "real offense" sentencing), *id.* This court rejected that argument, noting that, although the Guidelines generally use a "charge offense" approach to sentencing, *see id.* at 248 (tracing the Sentencing Commission's shift to a "charge offense" approach); *Guidelines Manual, supra,* at 1.5–1.6 (Commission's review of different approaches); *see also United States v. Correa–Vargas,* 860 F.2d 35, 38 (2d Cir.1988), the Guidelines do treat certain offenses on a "real offense" basis, *see Guidelines Manual, supra,* at 1.5 ("The [Guidelines sentencing] system is not ... pure; it has a number of real elements."); *see also* Breyer, *The Federal Sentencing Guidelines*

*and the Key Compromises Upon Which They Rest,* 17 Hofstra L.Rev. 1, 8–12 (1988).

The Guidelines adopt a "real offense" approach to those offenses (including drug trafficking) for which the Guidelines list a number of different "offense levels," or benchmark sentences. For these "multi-level" types of crimes, the Guidelines prescribe higher offense levels for more serious crimes. *See, e.g., Guidelines Manual, supra,* § 2D1.1 (guideline for drug trafficking offenses).

Once it is evident that a crime comes within one of these "multi-level" categories, the court must select the appropriate offense level *within* that category of offense. To do so, the court must take into consideration all of the acts aided or abetted by the defendant that were a part of the same course of conduct or common scheme as the offense of conviction. *See id.* § 1B1.3. Thus, in the case of drug trafficking offenses, under the Guidelines the offense level applicable to the sentence will be based upon the full amount of contraband involved in the offense, *see Paulino,* 873 F.2d at 24–25; *Guerrero,* 863 F.2d at 247–49; the sentence ultimately derived will, therefore, basically be a "real offense" sentence. As the Commission has pointed out, this "real offense" approach keys the sentence to the real harm posed by the offense, and, by disassociating the sentence from the offenses actually charged, takes away from the charging prosecutor much of the power to determine the ultimate sentence. *See Guidelines Manual, supra,* at 1.5–1.6.

Citing the Commission's decision to adopt this type of "real offense" sentencing with respect to drug trafficking offenses, the court in *Guerrero* rejected the claim that the Guidelines sentence in that case should have been based only upon the offense charged, rather than upon the "real offense." *See Guerrero,* 863 F.2d at 249; *see also* Purdy, *Plea Agreements Under the Federal Sentencing Guidelines,* N.Y. L.J., Feb. 6, 1989, at 2, cols. 1–2 ("real offense" conduct is "used [in these cases] in determining the guideline range"). As

*Guerrero* makes plain, the district court herein did not err in using the full quantity of drugs involved to calculate the Guidelines sentence. *See* 863 F.2d at 249 (step-by-step determination of Guidelines sentence); *see also United States v. Perez,* 871 F.2d 45 (6th Cir.1989); *United States v. Sarasti,* 869 F.2d 805, 806 (5th Cir.1989) ("the district court is not bound by the quantity of drugs mentioned by the indictment"). Appellant did not in fact challenge the assertion in the presentence report that 25 kilograms of cocaine were found in his possession, *cf. Guidelines Manual, supra,* § 6A1.3 (suggested procedures if facts are in dispute), and thus the Guidelines range, informed by the offense level, was correctly calculated based upon the full amount of cocaine seized from appellant.

## II. *Appellant's Understanding of the Guidelines*

Appellant also argues that his sentence must be vacated because, at the time he tendered his plea of guilty, he did not fully understand what his likely sentence would be under the Sentencing Guidelines. Appellant argues on appeal that both he and his counsel assumed that the sentence would be based upon 500 grams of cocaine (the amount specified in the count to which he pleaded guilty), not the full 25 kilograms (the amount seized from appellant), and that the sentence should be vacated because both the prosecutor and the district court failed to explain to him that the Guidelines sentencing range would be based upon the full 25 kilograms.

We recognize that a defendant's guilty plea must be both knowing and voluntary in order to be valid, and that the defendant's decision to plead must constitute a "deliberate, intelligent choice between available alternatives." *Rosado v. Civiletti,* 621 F.2d 1179, 1191 (2d Cir.), *cert. denied,* 449 U.S. 856, 101 S.Ct. 153, 66 L.Ed.2d 70 (1980). To ensure that the plea is made knowingly and voluntarily, the district court must, before accepting the plea, inform the defendant of "the mandatory minimum penalty provided by law, if any,

and the maximum possible penalty provided by law." Fed.R.Crim.P. 11(c)(1).

No contention is made herein that the district court failed to apprise appellant of the statutory minimum and maximum penalties he faced. *Cf. United States v. Khan*, 857 F.2d 85, 87 (2d Cir.1988), *modified on rehearing*, 869 F.2d 661 (2d Cir. 1989). Nor does appellant claim that the prosecutor failed to abide by any promises made to appellant during plea negotiations. *See, e.g., Bordenkircher v. Hayes*, 434 U.S. 357, 362, 98 S.Ct. 663, 667, 54 L.Ed.2d 604 (1978); *United States v. Tobon-Hernandez*, 845 F.2d 277, 279–80 (11th Cir.1988). Instead, appellant argues in essence that it rested with the government and the court to calculate and explain the likely Guidelines range to him.

■ Appellant's claim that the government wrongly withheld information fails, however, for it is not the government's duty "to assist actually and substantially the defendant in deciding whether to plead guilty." *Cf. Bradbury v. Wainwright*, 658 F.2d 1083, 1087 (5th Cir. Unit B Oct. 1981), *cert. denied*, 456 U.S. 992, 102 S.Ct. 2275, 73 L.Ed.2d 1288 (1982). The fact that the government's attorney did not explain the applicable Guidelines sentencing range to appellant violated no duty that the government owed to him and thus provides no basis for a finding of reversible error.

Appellant also claims that the district court erred in not explaining the Guidelines sentencing range to him at the time he offered his plea of guilty. This claim, too, must fail. We recognize that, at bottom, the colloquy required by Rule 11 is meant to ensure that the defendant is "aware of the consequences of his plea." *See McCarthy v. United States*, 394 U.S. 459, 464, 89 S.Ct. 1166, 1170, 22 L.Ed.2d 418 (1969); *United States v. Persico*, 774 F.2d 30, 33 (2d Cir.1985). The question, then, is which "consequences" must be explained to the defendant. Under Rule 11, a defendant must be apprised of the range of punishment to which he may subsequently be sentenced. Fed.R.Crim.P. 11(c)(1); *see Coleman v. Alabama*, 827 F.2d 1469, 1473 (11th Cir.1987) (citing *Boykin v. Alabama*,

395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969)). A 1975 amendment to Rule 11 made clear, however, that under the Rule the defendant need only "be informed of ... two sentencing consequences: 'the mandatory minimum penalty provided by law ... and the maximum possible penalty provided by law.'" *Hunter v. Fogg*, 616 F.2d 55, 60 (2d Cir.1980).

Thus, it was enough that the district court herein informed appellant of the minimum and maximum sentences which he faced—Rule 11 required no more. The statutory minimum and maximum sentences for the offense of conviction mark the boundaries within which the Guidelines sentence must fall. *See* Weich, *Plea Agreements, Mandatory Minimum Penalties and the Guidelines*, 1 Fed.Sent.Rep. 266, 267–69 & n. 2 (1988). The district court was not required to calculate and explain the Guidelines sentence to the appellant before accepting the plea, for, once appellant was informed of the possible consequences enumerated in the Rule—the maximum and the minimum sentences—the requisites of Rule 11 were met, *see Hunter*, 616 F.2d at 60, and the plea should not be vacated, *cf. Lewis v. United States*, 601 F.2d 1100, 1101 (9th Cir.1979) (court need not inform the defendant of the probability of his receiving one sentence or another); *Paradiso v. United States*, 482 F.2d 409, 415 (3d Cir.1973) (Rule 11 does not require that the defendant be informed of the actual sentence he will receive). *But cf.* Breyer, *supra*, at 30 n. 144 (suggesting that Rule 11(c)(1) may require court to await the presentence report so as to fully explain to defendant the consequences of his plea under the Guidelines).

■ As noted, the purpose of Rule 11 is to ensure that a guilty plea represents a voluntary and intelligent choice for the defendant. *See North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed. 2d 162 (1970). While it might be desirable if each defendant, at the time of tendering a guilty plea, were fully cognizant of his likely sentence under the Sentencing Guidelines, we decline to read such a requirement into Rule 11(c)(1). Instead, we simply

note that, "in the interest of fairness, it may be good practice for the [district] court to assure itself that the defendant has discussed the guidelines with defense counsel and has been advised about their applicability." Judicial Conference Committee on the Administration of the Probation System, *Recommended Procedures for Guideline Sentencing and Commentary* 17 (Aug. 1987), *reprinted in Federal Sentencing Guidelines* 769, 785 (Prac.L. Inst.Litig.Ser. No. 146) (1987). Moreover, the sentence likely to be imposed can in some instances be readily calculated from the universe of facts before the district court at the time of the plea. In those cases where the applicable Guidelines sentence is easily ascertainable at the time the plea is offered, the district court has full discretion to—and, where feasible, should —explain the likely Guidelines sentence to the defendant before accepting the plea.

### III. *The Due Process Challenge to the Guidelines Sentence*

■ Finally, appellant argues that the Sentencing Guidelines are unconstitutional in that they are violative of the due process clause. Relying largely upon the reasoning in *United States v. Bolding*, 683 F.Supp. 1003 (D.Md.1988), appellant argues that the Guidelines' mechanical formulae for sentencing have denied appellant his due process right to "an articulated exercise of discretion" by a sentencing judge. *See id.* at 1005. This court has, however, already held that the Guidelines are not violative of the due process clause. In *United States v. Vizcaino*, 870 F.2d 52 (2d Cir.1989), we explicitly held that "there is no constitutional right to judicial discretion in individualized sentencing." *Id.* at 56; *see also United States v. White*, 869 F.2d 822 (5th Cir.1989) (finding the Guidelines constitutional under the due process clause); *United States v. Frank*, 864 F.2d 992, 1008–10 (3d Cir.1988) (same), *cert. denied*, —— U.S. ——, 109 S.Ct. 2442, 104 L.Ed.2d 998 (1989).

We note, though—as did the *Vizcaino* court—that courts sentencing under the Guidelines retain an important measure of individualized discretion, under appropriate circumstances, to depart from the sentence mandated by the Guidelines. *See Vizcaino*, 870 F.2d at 53–54. Congress did "not intend that the guidelines be imposed in a mechanistic fashion.... The purpose of the sentencing guidelines is to provide a structure for evaluating the fairness and appropriateness of the sentence of an individual offender, not to eliminate the thoughtful imposition of individualized sentences." S.Rep. No. 225, 98th Cong., 2d Sess. 52 (1984), *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3235; *see also* Weich, *supra*, at 268 (the Guidelines "describe a presumptive sentencing range"). Thus, though a sentencing court is presumptively required to sentence within the applicable Guidelines range, *see* 18 U.S.C. § 3553(b) (Supp. V 1987), a district court has "wide discretion" to depart from the Guidelines in individual cases, *United States v. Sturgis*, 869 F.2d 54, 56 (2d Cir. 1989), if the court "finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines," 18 U.S.C. § 3553(b); *see United States v. Bermingham*, 855 F.2d 925, 928 (2d Cir. 1988). Moreover, the Commission has explicitly opted not to foreclose the courts (at least for the present) from considering any relevant factor in sentencing. *See United States v. Ryan*, 866 F.2d 604, 606–07 (3d Cir.1989); *Correa–Vargas*, 860 F.2d at 37; *Guidelines Manual, supra*, at 1.6–1.7.

This discretionary power to depart from the Guidelines may be especially important in cases such as this, where the "real offense" elements of the Guidelines sentence threaten to make the widespread practice of plea bargaining unworkable. If, as here, the ultimate sentence will be based upon the total amount of drugs seized rather than upon the amount charged, a criminal defendant is apt to have far less incentive to plead guilty at the outset in return for the prosecutor's offer to dismiss the more serious charged involving larger amounts of drugs. Rigid adherence to "real offense" sentencing under the Guidelines may undercut this form of plea bar-

gaining (known as "charge bargaining"), since it may have little meaning to a defendant that a prosecutor offers to dismiss one or more charges if the likely sentence is based upon the defendant's real, rather than charged, offenses. *Cf. United States v. Wright,* 873 F.2d at 441 (1st Cir. 1989) (under the Sentencing Guidelines, "'charge-type' plea bargains, *see* Fed.R. Crim.P. 11(e)(1)(A), may no longer prove of much value to defendants in drug cases"). *See generally* Schwartz, *Options in Constructing a Sentencing System: Sentencing Guidelines Under Legislative or Judicial Hegemony,* 67 Va.L.Rev. 637, 680–81 (1981) (discussing conflicts between plea bargaining and "real offense" sentencing).

Moreover, weakening the plea bargaining system would not seem to have been part of Congress' intent in passing the Sentencing Reform Act. One of Congress' principal goals in establishing the Sentencing Guidelines was to reduce the sometimes "astounding" disparities that Congress found among sentences in the federal courts, *see* S.Rep. No. 225, *supra,* at 41, disparities that occurred in large part because of the "almost unfettered" sentencing discretion that federal judges had traditionally exercised, *see Mistretta v. United States,* —— U.S. ——, 109 S.Ct. 647, 650, 102 L.Ed.2d 714 (1989); *Vizcaino,* 870 F.2d at 54.

Congress' intent was to create a system of guidelines that would help direct, but not completely take away, judicial discretion in sentencing. Congress' concern regarding plea bargaining centered on *prosecutors'* discretion in charge bargaining, which it believed if left unchecked would undermine uniformity in sentencing. *See* 28 U.S.C. § 994(a)(2)(E) (Supp. IV 1986); S.Rep. No. 225, *supra,* at 63, 167; *Guidelines Manual, supra,* ch. 6, pt. B introductory commentary. In light of the prominent role plea bargaining plays in the United States' criminal justice system, *see, e.g., Santobello v. New York,* 404 U.S. 257, 260, 92 S.Ct. 495, 497–98, 30 L.Ed.2d 427 (1971); H.Rep. No. 247, 94th Cong., 1st Sess. 6 (1975) (discussing Fed.R.Crim.P. 11(e)), *reprinted in* 1975 U.S.Code Cong. & Admin. News 674, 678; U.S. Department of Jus-

tice, Bureau of Justice Statistics, *Sourcebook of Criminal Statistics—1987,* table 5.17, at 430 (1988) (in the year ending June 30, 1986, approximately 75% of the defendants processed in the Second Circuit pleaded guilty); Breyer, *supra,* at 29–30, and the large number of drug trafficking cases handled by the federal courts every year, it is unlikely that Congress intended to impede plea bargaining in this important category of cases.

Significantly, the Commission has been careful not to foreclose broad judicial discretion in plea bargaining situations. In discussing its very limited strictures on plea bargains, the Commission acknowledged that "[b]ecause of the difficulty in anticipating problems in this area, and because the sentencing guidelines are themselves to some degree experimental, substantive restrictions on judicial discretion [regarding plea agreements] would be premature at this stage of the Commission's work." *Guidelines Manual, supra,* ch. 6, pt. B introductory comments, at 6.5. Thus, "[w]ith respect to ... plea bargaining, the Commission has basically left the problem, for the present, where it found it." Breyer, *supra,* at 31.

Since the Sentencing Commission has not yet fully considered plea bargaining as a factor in shaping the current Guidelines, *cf.* 18 U.S.C. § 3553(b), it is not startling that a district court presently may depart from a Guidelines sentence in order to give effect to a plea bargain if such a departure is warranted. Congress has cautioned that courts should not sanction plea agreements if they will "result in undue leniency or unwarranted sentencing disparities," S.Rep. No. 225, *supra,* at 167; *see Guidelines Manual, supra,* ch. 6, pt. B introductory commentary, but a district court presented with a plea agreement retains discretion to depart so long as the sentence that results reflects the seriousness of the crime and deters future misconduct, *see* 18 U.S.C. § 3553(a) (Supp. V 1987) (statutory factors to guide sentencing decisions).

District courts still retain broad discretion to deny—as did the district court herein—requests to depart from the Guidelines.

*See Paulino,* 873 F.2d at 25. Judge Costantino determined that a departure downward to reflect cooperation with the government was justified, but that a departure simply to match the lower offense level corresponding to the amount of narcotics stated in the reduced count was not. Under the circumstances herein, the former decision was reasonable, *see* 18 U.S.C. § 3742(e)(3) (Supp. V 1987), and the latter was not an abuse of discretion, *see Paulino,* 873 F.2d at 25. Thus, we conclude that the district court correctly applied the Sentencing Guidelines.

The judgment of the district court is affirmed.