**UNITED STATES of America,**

v.

**Mohammed MUSTAKEEM, Defendant.**

**Crim. No. 90–166.**

United States District Court,
W.D. Pennsylvania.

April 14, 1995.

Margaret Picking, Assistant United States Attorney, for U.S.

Kim Wm. Riester, Scott, Vogrin, Riester & Jamiolkowski, Pittsburgh, PA, for defendant.

## MEMORANDUM OPINION

LEE, District Judge.

Presently before the Court is a Supplemental Motion to Vacate, Set Aside or Correct Sentence of the defendant, Mohammed Mustakeem, pursuant to 28 U.S.C. § 2255 (**Document No. 150**), which will be **DENIED**

for the reasons hereinafter set forth. Defendant is currently incarcerated in the Federal Corrections Institution located in Loretto, Pennsylvania.

Defendant advances three due process challenges to the Court's sentencing decision: (1) that his sentence should be vacated, set aside or corrected because the November, 1992, amendments, specifically Amendment Nos. 439 and 447, of the sentencing guidelines should be retroactively applied to his sentence; (2) sections 1B1.3 and 2D1.1 of the sentencing guidelines are inapplicable in a "reverse-sting" operation; and (3) section 2D1.1 is inapplicable to Mustakeem's sentence as Mustakeem did not produce any controlled substances or engage in any actions which were "intended to produce or reasonably capable of producing such substances."

## I. BACKGROUND

In February, 1991, a jury convicted Mustakeem of conspiracy to distribute and possess with intent to distribute in excess of five hundred (500) grams of a mixture of a substance containing a detectable amount of cocaine. On August 2, 1991, Defendant was sentenced by the Court to a period of incarceration of 121 months, to be followed by a sixty (60) month period of supervised release.

In August, 1993, Defendant filed *pro se* a Motion to Compel Return of Seized Property. By Order dated August 3, 1994, the Court granted in part and denied in part Defendant's motion and ordered the government to continue its investigation in order to locate certain other property of Defendant's which had not been located. Defendant then filed a Motion for Reconsideration of the Court's August 3, 1994 Order.

1. Mustakeem, through his counsel, has represented to the Court that he will waive the ineffectiveness of counsel arguments raised in his original motion to vacate and his motion to return property if he is successful on his supplemental motion to vacate. This opinion only addresses those issues raised by Mustakeem's supplemental motion to vacate based on his alleged denial of his constitutional right to due process.

As Mustakeem will not be successful on his supplemental motion to vacate, an evidentiary hearing will be scheduled on the ineffectiveness of counsel issues.

In June, 1994, Defendant filed *pro se* a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255, alleging ineffectiveness of counsel at both the trial and sentencing stages of this matter. Subsequent to the filing of this motion, the Court appointed attorney Kim Wm. Riester as counsel for Defendant. On December 8, 1994, counsel for Mustakeem filed the instant motion, pursuant to 28 U.S.C. § 2255, alleging two claims for relief: (1) that Mustakeem was denied effective assistance as guaranteed by the Sixth Amendment of the Constitution; and (2) that Mustakeem was denied his constitutional right to due process of law as guaranteed by the Fifth Amendment when the Court improperly imposed a sentence under the United States Sentencing Guidelines ("USSG"). On December 9, 1994, the Court held an evidentiary hearing on the Motions to Vacate.[1]

In his supplemental motion, Mustakeem alleges that certain amendments to the sentencing guidelines that became effective after his sentence and a subsequent Third Circuit decision, *U.S. v. Collado,* 975 F.2d 985 (3d Cir.1992), clarified the application of the sentencing guidelines and can, therefore, be applied retroactively. Mustakeem contends that an alleged misapplication of the sentencing guidelines effectively increased his sentence, resulting in his being held accountable for four kilograms of cocaine, with a resulting offense level of 30, rather than being held accountable for only one kilogram of cocaine, with a resulting offense level of 26.

Mustakeem further contends that the provisions of USSG § 1B1.1(3) are inapplicable in a "reverse-sting"[2] situation as "there was

2. At all times, the cocaine which Mustakeem agreed to purchase was either in the possession of or control of the Government and met in all respects the guidelines of the DEA with regard to "reverse sting" operations found at the Criminal Law Reporter, Vol. 20, No. 17, February 2, 1977, p. 2–277:

E. Undercover operations shall not include the furnishing of a controlled substance except in extraordinary cases after consultation with the appropriate United States Attorney, when the Administrator of DEA determines that there is reason to believe such activity will lead

no reasonable foreseeability to specific amounts distributed by the co-conspirators since none of the conspirators did not engage in any distributions." Supplemental Motion, at unnumbered 3.

## II. Discussion

### A. Retroactivity of Sentencing Guidelines

#### 1. *Amendments to USSG Section 1B1.3*

Mustakeem asserts that the Court misapplied the sentencing guidelines by holding him vicariously liable for the entire amount of cocaine involved in the conspiracy. The thrust of Mustakeem's argument relies on certain amendments to USSG section 1B1.3(a), in specific, Amendment No. 439 in Appendix "C" to the Guidelines Manual. Amendment No. 439 establishes "a stricter, more detailed and individualized standard for a sentencing court to follow when it determines a conspirator's 'relevant conduct.'" *United States v. DiMaio*, No. CRIM. 89–0003–11, 1994 WL 25376, at *5 (E.D.Pa.1994), *aff'd*, 37 F.3d 1489 (3d Cir.1994).

Mustakeem claims that the 1992 amendment to USSG section 1B1.3(a) and the accompanying commentary clarify the meaning of the phrase "jointly undertaken criminal activity" by focusing on the scope of the criminal activity a particular defendant agrees to jointly undertake. The amended Application Note 2 of section 1B1.3(a) reads, in pertinent part, as follows:

> Because a count may be worded broadly and include the conduct of many participants over a period of time, the scope of the criminal activity jointly undertaken by the defendant (the 'jointly undertaken criminal activity') is not necessarily the same as the scope of the entire conspiracy, and hence relevant conduct is not necessarily the same for every participant. In

order to determine the defendant's accountability for the conduct of others under subsection (a)(1)(B), the court must first determine the scope of the criminal activity the particular defendant agreed to jointly undertake (i.e., the scope of the specific conduct and objectives embraced by the defendant's agreement). The conduct of others that was both in furtherance of, and reasonably foreseeable in connection with the criminal activity jointly undertaken by the defendant is relevant conduct under this provision. The conduct of others that was not in furtherance of the criminal activity jointly undertaken by the defendant, or was not reasonably foreseeable in connection with that criminal activity, is not relevant conduct under this provision.

Guidelines § 1B1.3, Application Note 2.

As noted, the amendments to section 1B1.3 relied upon by Mustakeem also became effective after he was sentenced. Mustakeem asserts, over the objection of the government, that the amendments to section 1B1.3 also can be applied retroactively.

#### 2. *Amendments to USSG Section 2D1.1*

Mustakeem claims that the 1992 amendments to USSG section 2D1.1 and the accompanying commentary clarify the guideline provisions dealing with attempts and conspiracies in drug cases. Specifically, amended Application Note 12 of section 2D1.1, reads in pertinent part, as follows:

> In an offense involving negotiation to traffic in a controlled substance, the weight under negotiation in an uncompleted distribution shall be used to calculate the applicable amount. However, where the court finds that the defendant did not intend to produce and was not reasonably capable of producing the negotiated amount, the

to the prosecution of one or more individuals who finance, control, or direct a drug trafficking organization, or to the interdiction of the flow of drugs from a significant drug trafficking operation. In making such determinations the Administrator of DEA shall take into account the type and amount of drug involved; its likelihood of reaching consumers; the number and position in the drug trafficking organization of subjects who have, and who have not, been sufficiently identified to be arrested; the

type and amount of evidence necessary to complete the investigation; the time required to attempt to do so; and the likelihood of obtaining such evidence.

While there is no specific reference in the drugs acts with regard to "reverse sting" operations, it is clear that Congress was not unaware of such law enforcement tactics. *See* Memorandum Opinion, CR No. 90–166, slip op. at 6–9 (W.D.Pa. March 4, 1991), where this Court has previously discussed reverse sting operations.

court shall exclude from the guideline calculation the amount that it finds the defendant did not intend to produce and was not reasonably capable of producing.

Guidelines § 2D1.1, Application Note 12.

As noted, the amendments and commentary to section 2D1.1 relied upon by Mustakeem became effective after he was sentenced. Mustakeem, therefore, necessarily asserts, over the objection of the government, that the amendments to section 2D1.1 can be applied retroactively.

3. *18 U.S.C. § 3582(c) and USSG section 1B1.10*

In support of its argument that the amendments to section 1B1.3 and 2D1.1 are not to be given retroactive application, the government cites to 18 U.S.C. § 3582(c), which provides that the Court may not modify a term of imprisonment once it has been imposed, except under certain circumstances. Additionally, the government relies upon section 1B1.10 of the Sentencing Guidelines, which governs retroactive application of amendments. In the current Guidelines Manual (November 1994), paragraph (c) of section 1B1.10 lists eighteen amendments to the sentencing guidelines that are to be applied retroactively, none of which are those amendments to sections 1B1.3 and 2D1.1 upon which Mustakeem relies. The government argues that such amendments, therefore, cannot be retroactively applied, and, thus, Mustakeem's claims must fail.

a. *Clarifying Amendments Can Be Applied Retroactively*

■ When an amendment to a guideline serves merely to clarify the meaning of an existing guideline, "courts have consistently held that such amendments may be used to explain existing guidelines and may receive retroactive effect, irrespective of whether they are listed in section 1B1.10." *DiMaio,* 1994 WL 25376, at *8, *aff'd,* 37 F.3d 1489 (3d Cir.1994). *See also United States v. Restrepo,* 946 F.2d 654 (9th Cir.1991) (en banc), *cert. denied,* 503 U.S. 961, 112 S.Ct. 1564, 118 L.Ed.2d 211 (1992); *United States v. Deigert,* 916 F.2d 916, 917 (4th Cir.1990); *United*

*States v. Guerrero,* 863 F.2d 245, 250 (2d Cir.1988).

The Sentencing Commission, in drafting the 1992 amendments to sections 1B1.3 and 2D1.1, Amendment Nos. 439 and 447, expressly stated that the purpose of the changes was to clarify, simplify, and more fully illustrate the operation of the guidelines. A number of courts, consistent with the language used by the Sentencing Commission, have held that the amendments to section 1B1.3 are clarifying and can be applied retroactively. *DiMaio,* 1994 WL 25376, at *9, *aff'd,* 37 F.3d 1489 (3d Cir.1994) (Amendment 439 is clarifying and can be applied retroactively); *United States v. Lambert,* 995 F.2d 1006, 1009 n. 3 (10th Cir.1993) (Amendment 439 did not substantively alter guideline, but merely clarifies and explains its operation), *cert. denied,* — U.S. —, 114 S.Ct. 333, 126 L.Ed.2d 278 (1993); *United States v. Evbuomwan,* 992 F.2d 70, 73 (4th Cir.1993) (1992 amendments to section 1B1.3 clarify requirements for sentence enhancement). In the absence of authority to the contrary, the Court finds that Amendment Nos. 439 and 447 are clarifying amendments and can be applied retroactively.

b. *Sentencing Court Followed the Guidelines As Amended*

■ A clarification to the sentencing guidelines, however, does not make a substantive change in the application of a guideline. "Consequently, subsequent clarifying amendments do not dictate that a different result must always be reached when a sentence is revisited." *DiMaio,* 1994 WL 25376, at *10, *aff'd,* 37 F.3d 1489 (3d Cir.1994).

■ Mustakeem contends that he cannot be held accountable, for offense calculation purposes, for the full quantity of narcotics involved in the conspiracy because that amount was not "reasonably foreseeable" on his part. Mustakeem claims that he did not know the quantity of the narcotics involved in the transaction (four kilograms) and that his involvement was limited to purchasing a single kilogram. Contrary to his contentions, the evidence adduced at trial demonstrates that Mustakeem can be held accountable for the total narcotics involved.

The government points out the evidence showed, *inter alia*, the following: Robert MacFarlane told Jack Coker that his people wanted four kilograms; Todd Wright and Mustakeem discussed four kilograms, and the price per kilogram was based on that amount; and that during a discussion about the details of the purchase of the cocaine, Mustakeem said that he "first want[ed] to buy a kilo and see how everything works, like, and if everything is okay, we come back tomorrow."

Based upon the trial record as set forth by the government, the government has demonstrated by at least a preponderance of the evidence that Mustakeem was a full participant in the conspiracy and reasonably foresaw the full quantity of narcotics involved (four kilograms). For this reason, the Court applied the sentencing guidelines, in particular, sections 1B1.3 and 2D1.1, in a manner consistent with the later amendments, by sentencing him for the distribution of narcotics by the conspiracy that was "within the scope and in furtherance of the activity [Mustakeem] agreed to undertake." *Collado*, 975 F.2d at 992.

Thus, Mustakeem was sentenced for his own conduct, the scope of his own agreement and the "reasonable foreseeable" conduct of his co-conspirators. For these reasons, the Court did not misapply the guidelines or the amended commentary, and did not violate Mustakeem's due process liberty interests.

## B. Sections 2D1.1 and 1B1.3 of the Sentencing Guidelines are Applicable in a "Reverse–Sting" Operation

■ Mustakeem next contends that the provisions of the Sentencing Guidelines are inapplicable to a reverse-sting operation especially when the Government, rather than the accused or his confederates, establishes the specific amount of the substances involved in the transaction.

Mustakeem has not cited any authority, nor has the Court through its own independent research, found any authority binding upon the Court which dictates that the Sentencing Guidelines are inapplicable in a "reverse sting" operation. Moreover, as the Court explained in its Memorandum Opinion

of March 4, 1991, reverse sting operations were mentioned during the legislative debate regarding the "Omnibus Drug Initiative Act of 1988," 134 Cong.Rec. S15990 (daily ed. October 14, 1988), indicating Congress' intention for the sentencing guidelines to apply to reverse sting operations. For these reasons, the Court will reject Mustakeem's argument and finds that the Sentencing Guidelines clearly apply in a "reverse sting" operation.

## C. Section 2D1.1 is Applicable to Mustakeem's Sentencing Because He Engaged in An Action Which Was "Intended to Produce or Reasonably Capable of Producing Such Substances"

■ Lastly, Mustakeem asserts that the provisions of section 2D1.1 are inapplicable to the instant conspiracy because Mustakeem did not produce any controlled substances or engage in any acts which were "intended to produce or reasonably capable of producing such substances". In making this argument, Mustakeem assigns too literal a meaning to the term "produce."

In addressing the language of Note 12 of section 2D1.1, courts have not hesitated to interpret that language according to context. *United States v. Raven*, 39 F.3d 428, 436 (3d Cir.1994). *See also United States v. Brooks*, 957 F.2d 1138, 1151 (4th Cir.1992) (language in question applied to a purchaser because the note "speaks of 'traffic in a controlled substance,' ... a term sufficiently broad to encompass the purchase and sale of controlled substances"); *United States v. Tillman*, 8 F.3d 17, 19 (11th Cir.1993) (in a case where defendant was a seller of drugs, "to 'produce' means to obtain or deliver, as well as to manufacture").

In *Raven*, the Third Circuit analyzed the phrase at issue in the context of a defendant who had been convicted of conspiring to transport drugs. In its analysis, the court stated "[i]t seems obvious, then, that the word 'produce' must vary according to context.... **When the defendant is a drug buyer, Note 12 would address the quantity of drugs that the defendant intended to purchase and was reasonably capable of**

purchasing." *Raven*, 39 F.3d at 437 (emphasis added).

When sentencing Mustakeem, the Court applied section 2D1.1 in a manner consistent with the later amendments and with Third Circuit precedent. Mustakeem was sentenced based on the quantity of drugs that he intended to purchase and was reasonably capable of purchasing.

### III. CONCLUSION

For the foregoing reasons, Mustakeem's supplemental petition to correct his sentence pursuant to 28 U.S.C. § 2255 will be denied only as to the challenge seeking to vacate, set aside or correct sentence based on a constitutional right to due process of law.