UNITED STATES of America,
Appellee/Cross–Appellant,

v.

Eduardo SCHAPER,
Defendant–Appellant/Cross–Appellee.

Nos. 819, 820, Dockets 89–1405, 89–1441.

United States Court of Appeals,
Second Circuit.

Argued Feb. 12, 1990.

Decided May 16, 1990.

Justin Levin, Canton & Jasper, New York City, for defendant-appellant/cross-appellee.

Henry J. DePippo, Asst. U.S. Atty. for S.D.N.Y., New York City (Joan McPhee, Asst. U.S. Atty., Otto G. Obermaier, U.S. Atty. for S.D.N.Y., New York City, of counsel), for appellee/cross-appellant.

Before CARDAMONE and WINTER, Circuit Judges, and KEENAN,* District Judge.

* The Honorable John F. Keenan, United States District Judge for the Southern District of New York, sitting by designation.

WINTER, Circuit Judge:

Eduardo Schaper appeals from his conviction and sentence after a bench trial before Judge Haight. Schaper claims that evidence seized from his residence should have been suppressed because it was obtained illegally in a warrantless search. Schaper also challenges his sentence, arguing that the district court improperly calculated his base offense level under the Sentencing Guidelines by adding a two-point enhancement for his possession of a firearm. Pursuant to 18 U.S.C. § 3742(b)(1) (1988), the government cross-appeals from Schaper's sentence on the ground that the district court incorrectly applied the Sentencing Guidelines in declining to calculate into Schaper's base offense level quantities of narcotics that he allegedly traded but that were neither seized nor charged in the indictment.

We affirm defendant's conviction and his sentence as to the two-point enhancement. However, we agree with the government that the district court misapplied the Guidelines in calculating the base offense level. The court should have considered whether quantities of narcotics traded by Schaper that were neither seized nor charged in the indictment were part of the same scheme or plan as the offenses leading to Schaper's conviction. Accordingly, we reverse and remand for further proceedings.

## BACKGROUND

On November 28, 1988, a government informant contacted Schaper in a recorded phone call and arranged a meeting to purchase cocaine from Schaper. At the meeting, the informant agreed to purchase ten kilograms of cocaine from Schaper later that evening. Law enforcement officers followed Schaper from the meeting to Schaper's residence. Schaper detected the surveillance and proceeded to circle blocks, make frequent U-turns, and stick his head out the window to see who was following him. Finally, Schaper entered his house and phoned the informant to say that he had been followed after their meeting. Schaper further indicated that he did not want to complete the transaction that night and was suspicious that the informant was setting him up. The informant reassured Schaper, who then agreed to complete the transaction the next day. After relating these conversations to the law enforcement agents, the informant ceased cooperating with them, fearing that he had aroused Schaper's suspicions.

The next day, the agents re-established surveillance of Schaper's house. Mrs. Schaper and another woman left the residence at around 12:30 p.m. and returned a half hour later. Around 1:30 p.m., Schaper and a man later identified as his father-in-law left the house and got into the car. Schaper was carrying a white paper shopping bag with handles, which he put in the back seat before they drove away. Using three cars, the agents stopped Schaper's car approximately 200 yards and around a corner from Schaper's house. An agent asked Schaper what was in the bag, which was visible in the back seat. Schaper indicated that it was just garbage and invited the agent to examine it. The agent then did so and found notebooks and torn papers that he believed to be records of narcotics transactions. The agent then read Schaper his *Miranda* rights and handcuffed him. Schaper's father-in-law also was arrested. The arrests were made on the street while several cars drove by and many passers-by stopped briefly to observe the events.

The arresting agent then contacted an Assistant United States Attorney, who directed the agent to secure Schaper's house before applying for a search warrant. The agents returned to the residence with the arrestees and explained to Schaper's wife that they were going to apply for a search warrant but were first going to make a security sweep of the house. No weapons or contraband were discovered in that sweep. As the agents started to apply for a warrant, Schaper's wife agreed to consent to the search and signed a written consent-to-search form. During the search, Schaper told one of the officers that he had a gun under his bed and five kilograms of cocaine in the garage, indicating to the officer where to find the key to the garage. The agents found a load-

ed .9mm handgun in the bedroom and ten kilograms of cocaine in the garage.

Schaper was charged with one count of conspiring to distribute more than five kilograms of cocaine in violation of 21 U.S.C. § 846 (1988) and one count of possessing with intent to distribute more than five kilograms of cocaine in violation of 21 U.S.C. §§ 812, 841(a)(1) and 841(b)(1)(A) (1988). Schaper moved to suppress the evidence seized in the search of his house and garage. After a hearing, the district court denied the motion to suppress, holding that the warrantless entry into Schaper's residence was justified by exigent circumstances, that both Schapers subsequently consented to the search, and that discovery of the evidence was inevitable. *United States v. Schaper,* No. 88–Cr.–916 (CSH) (S.D. N.Y. April 21, 1989) (1989 WESTLAW 46283) (Memorandum Opinion and Order denying suppression motion).

Schaper waived a jury trial, and on the basis of stipulated facts the district court issued findings of fact and conclusions of law convicting him on both counts of the indictment. Schaper was sentenced on July 28, 1989, to concurrent terms of 208 months' imprisonment on each count followed by concurrent terms of five years' supervised release on each count.

## DISCUSSION

### A. *Suppression of Evidence*

■ We affirm the district court's denial of the suppression motion. First, the district court properly held that exigent circumstances justified the warrantless entry into the Schaper residence. Such a warrantless entry is justified where the agents have a reasonable belief that there are persons inside the residence who might, *inter alia,* destroy evidence. *See United States v. Vasquez,* 638 F.2d 507, 531–32 (2d Cir.1980), *cert. denied,* 454 U.S. 975, 102 S.Ct. 528, 70 L.Ed.2d 396 (1981); *see also United States v. Agapito,* 620 F.2d 324, 336 n. 18 (2d Cir.) (officers may conduct a security check inside premises after an arrest outside the premises, but "the arresting officers must have (1) a reasonable belief that third persons are inside, and (2)

a reasonable belief that the third persons are aware of the arrest outside the premises so that they might destroy evidence, escape or jeopardize the safety of the officers or the public"), *cert. denied,* 449 U.S. 834, 101 S.Ct. 107, 66 L.Ed.2d 40 (1980). The test for determining whether a warrantless entry is justified by exigent circumstances is an objective one, and the agent's belief in the existence of such circumstances must therefore be objectively reasonable. *See United States v. Miles,* 889 F.2d 382, 383 (2d Cir.1989); *United States v. Zabare,* 871 F.2d 282, 291 (2d Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 161, 107 L.Ed.2d 119 (1989).

■ In this case, there was ample probable cause to believe that Schaper was trading in cocaine and that evidence of this crime was located in his residence. Schaper's offer to sell cocaine to the informant clearly demonstrated that Schaper was engaged in narcotics transactions. After stopping Schaper shortly after he drove from his house, the agents discovered he was attempting to remove what appeared to be narcotics records from the residence. This provided cause to believe that the house was a base for Schaper's illegal activity and that other evidence might be there.

The agents also had an ample basis for the apprehension that evidence in the house might be destroyed if it were not immediately secured. The agents knew that Schaper had detected their surveillance after meeting with the informant, had expressed suspicion that he had been "set up" by the informant, and was aware that the informant had not yet contacted him to complete the transaction. When the agents arrested Schaper, he had been removing a bag containing the apparent narcotics records that had been torn and partially destroyed. Finally, the agents were reasonably concerned that Schaper's arrest in mid-afternoon on a public street a short distance from his house might be reported by onlookers to persons known to be in the house. The arrest had involved several vehicles, and the stopping of Schaper's car and his subsequent arrest had been ob-

served by a number of people in the neighborhood. From their surveillance of the house, the agents knew that at least Mrs. Schaper and another woman were in the house, and the agents reasonably could have believed that the occupants of the house were capable of removing or destroying further evidence. *See United States v. Gallo–Roman*, 816 F.2d 76, 80 (2d Cir. 1987); *cf. Zabare*, 871 F.2d at 291 (no extrinsic evidence of destruction of evidence necessary where there is ground for reasonable belief that evidence will be destroyed).

■ Second, the district court did not err in finding that the Schapers voluntarily consented to a search of their house and garage after the valid entry by the agents. Voluntariness is a question of fact to be determined from all the circumstances, *see Schneckloth v. Bustamonte*, 412 U.S. 218, 248–249, 93 S.Ct. 2041, 2058–59, 36 L.Ed.2d 854 (1973), and a trial court's determination that a person voluntarily consented to a search must be accepted unless that determination is clearly erroneous, *see United States v. Moreno*, 897 F.2d 26, 33 (2d Cir. 1990); *United States v. Arango–Correa*, 851 F.2d 54, 57 (2d Cir.1988).

■ In particular, we give deference to the trial judge's determinations regarding the credibility of witnesses. *See United States v. Dornblut*, 261 F.2d 949, 950–51 (2d Cir.1958), *cert. denied*, 360 U.S. 912, 79 S.Ct. 1298, 3 L.Ed.2d 1262 (1959). Here, the district court credited the agents' testimony that Mrs. Schaper's written consent to search the residence and the defendant's separate volunteering of information were not coerced.[1] The court declined to credit

Mrs. Schaper's testimony that the agents threatened her to obtain her consent to search. We have no reason to overturn these credibility determinations and conclude that the consent to search was voluntary. The district court therefore properly denied Schaper's motion to suppress the evidence found in his house and garage.[2]

B. *Sentencing*

1. Possession of Firearm

■ Schaper does not dispute that he had a loaded semiautomatic handgun in his master bedroom under the bed. He argues, however, that the district court improperly added a two-point enhancement for possession of a firearm in computing the base offense level under the Sentencing Guidelines. Schaper's theory is that no party was endangered by the weapon at the time of arrest or during any of the meetings before the arrest and that the government failed to show that the weapon was in any way connected with the offense.

The version of the Sentencing Guidelines that governed Schaper's sentencing provided for an increase in the base offense level of two points "[i]f a firearm or other dangerous weapon was possessed during commission of the offense." U.S.S.G. § 2D1.1(b)(1) (Oct. 1987).[3] Commentary 3 to Section 2D1.1. explains:

> The enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at his residence, had

1. Schaper argues that the finding of voluntariness was clearly erroneous because the Spanish-speaking agent who allegedly first discussed consent with Mrs. Schaper did not testify at the suppression hearing. However, the principal agent in the case, Detective Gentile, testified that he personally explained the consent form and its implications to Mrs. Schaper and that she indicated that she understood and proceeded to sign the form. Further testimony by other officers who discussed consent with Mrs. Schaper was not required as a matter of law.

2. Because we conclude that consent to search was voluntarily given after the agents lawfully

were in the house, we need not address the district court's alternative holding that discovery of the evidence was inevitable because it would have been discovered pursuant to a valid search warrant, *see Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984).

3. The current version of the Guidelines does not differ in any significant way and provides: "If a dangerous weapon (including a firearm) was possessed during commission of the offense, increase by 2 levels." U.S.S.G. § 2D1.1(b)(1) (Nov. 1, 1989).

an unloaded hunting rifle in the closet.... The adjustment is to be applied even if several counts are involved and the weapon was present in any of them. U.S.S.G. § 2D1.1, comment (n. 3) (Nov. 1, 1989) (unchanged from Oct. 1987 version).

In this case, the district court concluded that it was, in fact, "clearly improbable" that the weapon was *not* connected with Schaper's narcotics offenses. This conclusion is amply supported by the record, which indicates that Schaper stored the cocaine in his garage, kept the records of narcotics transactions at his house, and used the house phone to arrange cocaine deals. The presence of a weapon on those premises cannot be said to be unrelated to the ongoing narcotics trade. Judge Haight's conclusion that the firearm in question was possessed during the commission of Schaper's conspiracy and possession offenses was therefore proper. *Cf. United States v. Vasquez*, 874 F.2d 250, 251 (5th Cir.1989) (where defendant was not convicted of narcotics conspiracy, weapon found in defendant's residence was not "possessed during commission of the offense" of buying narcotics several miles away from the residence).

### 2. Quantities of Unseized, Uncharged Cocaine

■ The government cross-appeals from Judge Haight's application of the Sentencing Guidelines in calculating Schaper's base offense level. We conclude that further proceedings are necessary.

In Schaper's presentence report the Probation Office concluded that Schaper's base offense level was 36, based on its conclusion that the amount of narcotics involved in the offense exceeded fifty kilograms of cocaine. *See* U.S.S.G. § 2D1.1(a)(3) (Oct. 1987) (drug quantity table).[4] The probation officer included as relevant conduct purchases of nearly two-hundred kilograms of cocaine by Schaper in October and November 1988 as reflected in the records seized from Schaper on the day of his arrest.

At the sentencing hearing, Schaper's counsel argued that the base offense level should be based only on the amount of narcotics actually seized and charged, that is, ten kilograms of cocaine, resulting in a base offense level of 32. *See id.* Schaper's counsel also argued that the records provided insufficient evidence of additional transactions. The government noted that the conspiracy count of the indictment in fact charged Schaper with additional distributions of cocaine before November 1988 [5] and that the stipulated testimony of the government informant established that Schaper had distributed large amounts of cocaine prior to November 1988. The government further contended that the

---

4. The November 1989 revisions of the Sentencing Guidelines modified the drug quantity table to designate higher offense levels for categories corresponding to amounts of cocaine in excess of fifty kilograms, *see* U.S.S.G. § 2D1.1(c) (Nov. 1, 1989) (drug quantity table), but those Guidelines are applicable only to offenses committed after November 1, 1989, *see United States v. Guerrero*, 863 F.2d 245, 250 (2d Cir.1988) (Guidelines revision dated January 15, 1988, applicable to offenses committed after that date).

5. Count One of the indictment charged:
   1. From in or about January, 1988 to on or about November 29, 1988, in the Southern District of New York and elsewhere, EDUARDO SCHAPER, the defendant, together with others known and unknown to the Grand Jury, unlawfully, intentionally, and knowingly combined, conspired, confederated, and agreed together and with each other to violate the narcotics laws of the United States, specifically, Sections 812, 841(a)(1), and 841(b)(1)(A) of Title 21, United States Code.

   2. It was a part and object of this conspiracy that the defendant and his co-conspirators would and did possess with intent to distribute and distribute a Schedule II controlled substance, namely, more than 5 kilograms of mixtures and substances containing a detectable amount of cocaine.

   OVERT ACTS
   In furtherance of the conspiracy and to effect the objects thereof, the following overt acts, among others, were committed in the Southern District of New York:
   a. On or about November 29, 1988, EDUARDO SCHAPER, the defendant, possessed approximately 10 kilograms of cocaine in the garage of a house located at 1943 Gildersleeve Avenue, Bronx, New York.
   b. On or about November 29, 1988, EDUARDO SCHAPER possessed a loaded .9mm handgun in a house located at 1943 Gildersleeve Avenue, Bronx, New York.

records seized from Schaper and other evidence (including admissions by Schaper) indicate that he conducted transactions involving hundreds of kilograms of cocaine prior to the specific instance of possession in November 1988.

The district court made no findings regarding alleged narcotics transactions beyond the ten kilograms seized. Rather, Judge Haight found that the additional amounts of cocaine referred to in the presentence report were not charged in the indictment, and he declined to consider additional amounts that were neither seized nor charged in the indictment in computing Schaper's base offense level.[6] Accordingly, the district court applied the base offense level for ten kilograms of cocaine, which is 32. *See* U.S.S.G. § 2D1.1(a)(3) (Oct. 1987) (drug quantity table). We believe that the Guidelines require consideration of any additional amounts of cocaine that were traded as part of the same scheme or plan for which Schaper was convicted.

The pertinent offense Guidelines sections are U.S.S.G. §§ 2D1.1 and 2D1.4. Section 2D1.1 provides the drug quantity table by which the base offense level is determined. Section 2D1.4 applies to attempts and conspiracies, and the version in effect at Schaper's sentencing stated:

> If a defendant is convicted of participating in an incomplete conspiracy or an attempt to commit any offense involving a controlled substance, the offense level shall be the same as if the object of the conspiracy or attempt had been completed.

U.S.S.G. § 2D1.4(a) (Jan. 15, 1988). In determining a single base offense level for the two counts on which defendant was convicted, the district court presumably grouped the conspiracy count and the substantive count in accordance with U.S.S.G.

§ 3D1.2(b)(1) (June 15, 1988), which provides that "[a] count charging conspiracy or solicitation and a count charging any substantive offense that was the sole object of the conspiracy or solicitation" shall be grouped together.

Because the Section 2D1.1 drug quantity table contains several base offense levels, we must turn to Section 1B1.3 to inform selection of the base offense level. *See* U.S.S.G. § 1B1.3(a) (Jan. 15, 1988); *see also United States v. Guerrero*, 863 F.2d 245, 249 (2d Cir.1988) (describing Guidelines sentencing process for narcotics offense). Section 1B1.3(a) provides that conduct relevant to determining the guideline range is determined as follows:

> [T]he base offense level where the guideline specifies more than one base offense level ... shall be determined on the basis of ...
>
> .     .     .     .     .
>
> (2) solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction....

U.S.S.G. § 1B1.3(a) (Jan. 15, 1988). Because Schaper's offenses do require grouping, *see supra*, Section 1B1.3(a)(2) provides the relevant standard. *See United States v. Won Tae Kim*, 896 F.2d 678, 682 (2d Cir.1990) (discussing "relevant conduct" guideline). Accordingly, acts that are part of a "common scheme or plan" are relevant to determination of Schaper's base offense level.

In sentencing Schaper, Judge Haight declined to consider amounts of narcotics that were not charged in Schaper's indictment. The Sentencing Guidelines clearly provide,

---

**6.** After the two-point adjustment for possession of a firearm, *see supra*, and an additional two-point adjustment for obstruction of justice (from which Schaper does not appeal), *see* U.S.S.G. § 3C1.1, the court reached a total offense level of 36, which for Schaper's criminal history category indicated a Guidelines range for his sentence of 188 to 235 months, *see* U.S.S.G. ch. 5, Part A (Oct. 1987) (sentencing table). Judge Haight sentenced Schaper to concurrent terms of 208 months' imprisonment on each count followed by supervised release. Were the district court to conclude that an amount of more than 50 kilograms of cocaine should be counted as relevant conduct, Schaper's offense level would increase by four points to 40, indicating a guideline range of 292 to 365 months. *See id.* (sentencing table).

however, that a sentencing court must consider a defendant's involvement with quantities of narcotics not charged in the count(s) of conviction when such conduct was undertaken in the same course of conduct as the offense of conviction. *See* U.S.S.G. § 1B1.3(a)(2) (Jan. 15, 1988). The commentary to the Guidelines explicitly indicates that "in a drug distribution case, quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction." *Id.* at comment (background); *see also* U.S.S.G. § 2D1.1, commentary (n. 11) (Jan. 15, 1988) ("Types and quantities of drugs not specified in the count of conviction may be considered in determining the offense level.") (citing U.S.S.G. § 1B1.3(a)(2)). On the basis of these Guidelines provisions, we have held that the base offense level is to be calculated after taking into account the entire quantity involved in the defendant's demonstrated narcotics activity rather than a smaller amount for which the defendant has been charged and convicted. *See United States v. Bedoya,* 878 F.2d 73, 75 (2d Cir.1989); *United States v. Fernandez,* 877 F.2d 1138, 1141–42 (2d Cir.1989); *United States v. Guerrero,* 863 F.2d at 250; *see also United States v. Alston,* 895 F.2d 1362, 1371 (11th Cir.1990) (holding that quantities of drugs not included in count of conviction are properly included in sentencing calculations and noting that in so holding the Eleventh Circuit "join[s] six out of seven circuits that have addressed this question"). Accordingly, the fact that the additional amounts of cocaine that Schaper traded were not charged in the indictment is not dispositive. If such additional amounts of cocaine were part of a scheme or plan common with the counts of Schaper's conviction, they are relevant conduct under either Judge Haight's narrow view of the indictment or the government's more expansive view of the charge in the case.

Judge Haight noted that the cases cited above involved amounts of drugs that were actually seized from defendants even if they were not charged in the indictment. *See Bedoya,* 878 F.2d at 74–75 (total of 21 kilograms of cocaine seized from defendant and coconspirator); *Fernandez,* 877 F.2d at 1139 (25 kilograms of cocaine seized from defendant); *see also Guerrero,* 863 F.2d at 246 (defendant participated in arranging actual sale of 698 grams of heroin). Actual physical seizure, however, is not necessary for additional amounts of narcotics to be considered in base offense level calculations. The commentary to the Guidelines explicitly provides that

> [w]here there is no drug seizure *or the amount seized does not reflect the scale of the offense,* the sentencing judge shall approximate the quantity of the controlled substance. In making this determination, the judge may consider, for example, the price generally obtained for the controlled substance, *financial or other records,* similar transactions in controlled substances by the defendant, and the size or capability of any laboratory involved.

U.S.S.G. § 2D1.4, comment (n. 2) (Oct. 15, 1988) (emphasis added) (not changed in the Nov. 1989 revisions to the Guidelines).[7]

We therefore conclude that the district court erred in interpreting the "scale of the offense" for purposes of base offense level calculation to be limited to those quantities specifically charged in the indictment. Quantities of narcotics neither charged in the indictment nor physically seized are "relevant conduct" for calculation of the base offense level if they were part of the same course of conduct as the counts leading to conviction. We therefore reverse and remand the case for further sentencing proceedings. *See* 18 U.S.C. § 3742(f)(1) (1988). On remand, the district court must determine whether the alleged conduct involving the additional amounts of cocaine is demonstrated by a preponderance of the

---

**7.** This Guidelines commentary is applicable to narcotics offenses even where a narcotics conspiracy is not charged. *See* U.S.S.G. § 2D1.1 comment (n. 11) (Jan. 15, 1988) ("If the amount seized does not reflect the scale of the offense, *see* Application Note 2 of the Commentary to § 2D1.4.").

evidence, *see United States v. Shoulberg,* 895 F.2d 882, 886–87 (2d Cir.1990); *United States v. Guerra,* 888 F.2d 247, 251 (2d Cir.1989), *cert. denied,* — U.S. ——, 110 S.Ct. 1833, 108 L.Ed.2d 961 (1990), and is part of the same course of conduct, *cf. United States v. Won Tae Kim,* 896 F.2d at 684 (upward departures from Guidelines for misconduct not resulting in conviction permitted only where acts "relate in some way to the offense of conviction, even though not technically covered by the definition of relevant conduct").

The conviction is affirmed. The sentence is reversed and the matter remanded for further proceedings in accordance with this opinion.