UNITED STATES of America, Appellee,

v.

Louis ATHERTON,
Defendant–Appellant.

No. 870, Docket 90–1402.

United States Court of Appeals,
Second Circuit.

Argued Feb. 22, 1991.
Decided June 26, 1991.

MAHONEY, Circuit Judge:

Defendant-appellant Louis Atherton appeals from a judgment of the United States District Court for the District of Connecticut, Jose A. Cabranes, *Judge*, convicting him, after a jury trial, on two counts of distributing, and possessing with intent to distribute, cocaine in violation of 21 U.S.C. § 841(a)(1) (1988). Atherton contends that the district court erred by (1) denying his motion to suppress evidence on the ground that it was illegally obtained; (2) allowing the introduction on rebuttal of evidence that the government had agreed to exclude from its case-in-chief; and (3) excluding testimony that assertedly evidenced the bias of a government witness.

For the reasons that follow, we affirm.

## Background

Atherton was charged with distributing, and possessing with intent to distribute, cocaine on four different dates: April 19, 1988, February 17, 1989, March 16, 1989, and September 18, 1989. He was acquitted as to the April 19, 1988 and February 17, 1989 counts, but convicted on the March 16, 1989 and September 18, 1989 counts. All of the 1989 transactions were sales to Kevin Lowe, a confidential informant for the Drug Enforcement Administration ("DEA") who was equipped by DEA agents with a concealed transmitter that he wore during the cocaine purchases from and related meetings with Atherton.[1]

Atherton argued below, as he does here, that $15,000 of marked purchase money used in the September 1989 purchase was illegally seized from a vacant apartment and thus should not have been allowed in evidence at trial. This contention was the subject of a pretrial suppression hearing. We will first outline the events pertinent to the suppression issue, and then set forth further factual background relevant to the issues presented on appeal.

Amy B. Lederer, Asst. U.S. Atty. for the District of Connecticut, Hartford, Conn. (Stanley A. Twardy, Jr., U.S. Atty. for the District of Connecticut, Donna L. Fatsi, Asst. U.S. Atty. for the District of Connecticut, of counsel), for appellee.

Howard T. Owens, Jr., Trumbull, Conn. (Elaine M. Scanlon, Owens, Schine, Nicola & Donahue, of counsel), for defendant-appellant.

Before FEINBERG, MINER and MAHONEY, Circuit Judges.

---

1. There was one exception, a meeting on September 14, 1989 at which Lowe did not wear a transmitter because Atherton had previously related to Lowe his suspicion that an informant was cooperating with local authorities to uncover illegal narcotics activity.

## A. *Events Pertinent to Suppression Issue.*

The testimony of DEA Agent John Bryfonski at the suppression hearing related the following.

As early as 1986, informants told Bryfonski that Atherton and his brother, Alberto Howe, were trafficking in cocaine in the New London, Connecticut area. By the summer of 1988, Howe had become the target of a DEA investigation. Surveillance agents observed Howe making almost daily trips to the Seafarer mini-mall, an establishment owned by Atherton, in order to meet with cocaine customers. In August 1988, Howe was arrested while in possession of approximately three kilograms of cocaine, and handguns were seized from his office and automobile. He thereafter faced charges in state court.

Meanwhile, in April 1988, an informant had already made a controlled purchase of one-eighth ounce of cocaine from Atherton. In February 1989, Kevin Lowe purchased approximately four ounces of cocaine from Atherton in a vacant apartment in the Seafarer mall. Surveillance agents saw Howe enter the mall while that transaction was occurring. When Lowe returned to the mall about two weeks later to pay a final installment on this purchase, he encountered Howe, who offered to accept the delivery on behalf of Atherton. Instead, Lowe immediately thereafter made the payment to Atherton. On March 16, 1989, Lowe again purchased approximately four ounces of cocaine from Atherton in a vacant apartment at the Seafarer mall.

In September 1989, Lowe entered into negotiations with Atherton for another cocaine purchase. Lowe and Atherton arranged a sale of one-half kilogram of cocaine for $15,000 on September 18, 1989, with the exchange again to take place at the Seafarer mall. The Connecticut state police supplied Lowe with $15,000 "buy" money, which was treated with a powder that was undetectable unless exposed to ultraviolet light.

When Lowe arrived at the mall, he encountered Howe, who warned Lowe about an individual who had recently been arrested and might be cooperating with the police. Eventually, Lowe met with Atherton and followed him to a vacant apartment in the mall in order to conduct the exchange. Agents could overhear this meeting, specifically the counting of money, by means of the concealed transmitter that Lowe was wearing. As prearranged, Lowe, upon exiting the mall, delivered the cocaine to a DEA agent and left the area for a designated location approximately twenty minutes away.

At this juncture, agents arrested Atherton at a rear exit from the mall. Although Atherton professed ignorance of a drug transaction and declined to cooperate, a portable ultraviolet light revealed that he had some of the powder from the "buy" money on his hands. The money, however, was not in his possession.

The agents believed that the cocaine transaction might have involved Howe and Rosalbina Novoa, the operator of a video store in the mall who, like Howe, faced cocaine charges in state court. The agents further believed that these individuals were present within the mall, and consequently considered it imperative to locate the "buy" money before it could be removed.

Bryfonski and two other agents entered the mall and began checking for signs of ultraviolet powder on the doors of the second-floor apartments. Finding a smudge of powder on apartment number eight, the agents announced their presence, and, receiving no response, forcibly entered. After confirming that the apartment was vacant, the agents stationed a guard at the door and exited the mall.

While Bryfonski was meeting with other agents in the rear parking lot, they spotted Howe at the rear of the mall. They spoke with Howe for several minutes, and obtained his consent to expose the considerable amount of currency that he was carrying to the ultraviolet light. No powder was found on the money, and the interrogation of Howe was concluded.

By now, another agent had contacted Lowe, and that agent relayed to Bryfonski directions to the apartment where the drug

sale had taken place. Due to confusion concerning the starting point of the directions, however, Bryfonski and other agents went to an occupied apartment on the third floor of the mall, and the inhabitants permitted the agents to enter and confirm that they had the wrong unit.

Through further contact with Lowe, the agents ascertained that the apartment was on the second floor and had a "2" on the door. Proceeding to apartment number two, they found traces of powder on the door. After announcing their presence and receiving no response, the agents forcibly entered the apartment. The apartment was vacant, but there was a white plastic bag filled with currency on a table in front of the doorway. The agents did not search the premises, but guarded the apartment while Bryfonski took steps to secure a search warrant. The Seafarer mall is L-shaped, consisting of two buildings perpendicular to each other, with different street addresses, that are connected by a porch area. The search warrant that the agents ultimately obtained misidentified the street address attributable to apartment number two, indicating that the apartment was on Bank Street rather than the perpendicularly adjacent Golden Street.

B. *Other Events and Proceedings.*

As indicated earlier, a superseding indictment charged Atherton with four counts of distributing, and possessing with intent to distribute, cocaine in violation of 21 U.S.C. § 841(a)(1) (1988). Atherton moved to suppress items seized from the apartment, challenging both the validity of the warrant and the warrantless entry of the apartment. The district court rejected Atherton's contention that the misidentification of the street address of the apartment invalidated the warrant, concluding "that Apartment 2 was described adequately in the search warrant." The court also upheld the warrantless entry, stating:

In any event, to the extent that there's an issue regarding the existence of exigent circumstances to support the search of Apartment 2, I find that in the circumstances presented such exigent circumstances did exist.

. . . .

This was an investigation of a large scale narcotics matter in which agents could reasonably conclude that weapons might be present. The building in question, as I have found earlier, was large and maze-like. The agents were unfamiliar with the building. And the buy money provided by the State of Connecticut had not yet been found. Indeed, the defendant's brother, who was known to all concerned on the Government's side to be a narcotics trafficker, was at liberty somewhere within the mall.

All of these circumstances, among others, lead me to the conclusion that it was entirely reasonable for the agents to believe that there would be an effort to locate and sequester these monies. And in those circumstances, when the agents learned where this buy money was to be found, they were justified in entering the location without a warrant.

In addition to their entry into apartment number two, agents also made a warrantless search of a basement below Atherton's office. There they seized an empty kilogram package, strainers, a triple beam scale, and a "hot box," which is a device that measures the purity of cocaine. There was cocaine residue on some of these items. Conceding that this entry was illegal, the government agreed with defense counsel that the evidence could not be used in the government's case in chief.

At trial, Lowe testified for the government with regard to the 1989 transactions. On cross-examination, Lowe testified that he was motivated to cooperate with the government by his unhappy experiences with drug use and his desire to do something about the drug trade. In addition, Lowe testified that he had not used cocaine since 1986.

As part of the defense case, Atherton's counsel sought to elicit testimony that assertedly would demonstrate Lowe's bias and the motivation for his testimony, stating:

We have witnesses who would testify that in the latter part of December, 1988,

when he came to Connecticut, and throughout the entire spring and into May and June of 1989, Kevin Lowe was actively engaged in the use of cocaine, ... that he was distributing cocaine.

....

The record ... shows so far that Mr. Lowe came up to Connecticut under arrest, that he had some unfinished business with respect to probation which remains unfinished up to the present time, ... that he has been arrested four times in 1989, that ... he had a minimum jail exposure [due to] active [government] intervention....

....

[M]y purpose would be exactly that— to contradict the testimony of Kevin Lowe that he did what he did to help society, but, in fact, he did it to help himself and all of the various problems he was experiencing right while he was operating as an informant in 1989.

The district court granted the government's motion *in limine* to exclude this testimony pursuant to Fed.R.Evid. 608(b). The court subsequently heard the testimony of a defense witness on this issue with the jury absent, after which it reiterated its ruling to exclude the proffered testimony. The witness testified as to drug use, but not drug distribution, by Lowe in 1988 and 1989.

Atherton testified in his own behalf and was subjected to extensive cross-examination. On the basis of this testimony, discussed more fully hereinafter, the district court permitted the government to introduce in its rebuttal case testimony regarding the drug paraphernalia discovered in Atherton's office basement, items previously suppressed during the government's case-in-chief.

As stated earlier, the jury acquitted Atherton on the first two counts in the indictment, representing the earlier controlled sales of cocaine, but convicted him on the latter two counts, representing the more recent sales. This appeal followed.

**Discussion**

### A. *The Suppression Motion.*

■ Atherton contends that the district court erred by (1) finding that exigent circumstances justified the initial entry into apartment number two, and (2) concluding that the subsequent search warrant was effective despite the misidentification of the street address. Because we uphold the district court's finding of exigency, we need not address questions regarding the validity of the warrant.

The standards governing our review are well settled. "A district court's determination as to whether exigent circumstances existed is fact-specific, and will not be reversed unless clearly erroneous." *United States v. MacDonald*, 916 F.2d 766, 769 (2d Cir.1990) (in banc), *cert. denied*, —— U.S. ——, 111 S.Ct. 1071, 112 L.Ed.2d 1177 (1991). Similarly, the exigent circumstances exception to the warrant requirement, as it applies to this case, is well delineated in this circuit. In *United States v. Vasquez*, 638 F.2d 507 (2d Cir.1980), *cert. denied*, 450 U.S. 970, 101 S.Ct. 1490, 67 L.Ed.2d 620, 454 U.S. 847, 975, 102 S.Ct. 165, 528, 70 L.Ed.2d 135, 396 (1981), police officers, after arresting Vasquez on the street, *see id.* at 516 & n. 4, entered what they believed to be his apartment without a warrant in order to make a "security check," *see id.* at 512, 517, 532. We found that entry "reasonable" within the meaning of the fourth amendment because the district court "implicitly found that the officers entered with the intention to make a security check, and explicitly found that there were reasonable bases for their belief that additional evidence was present in the apartment and that there might be someone there who could destroy it." *Id.* at 532.

Since *Vasque.,* we have repeatedly upheld warrantless entries where law enforcement officers reasonably believed that immediate access to the premises was necessary to prevent the loss of evidence. *See, e.g., United States v. Schaper*, 903 F.2d 891, 894 (2d Cir.1990); *United States v. Miles*, 889 F.2d 382, 383 (2d Cir.1989) (per curiam); *United States v. Gallo–Ro-*

*man,* 816 F.2d 76, 79–80 (2d Cir.1987); *United States v. Martino,* 664 F.2d 860, 875 n. 6 (2d Cir.1981) (dictum), *cert. denied,* 458 U.S. 1110, 102 S.Ct. 3493, 73 L.Ed.2d 1373 (1982).

The district court's finding that this type of exigency existed at the time that the agents forcibly entered the apartment was, at a minimum, not clearly erroneous. Agent Bryfonski's testimony at the suppression hearing established that he and the other agents were aware that two persons who had previously been charged with cocaine trafficking were somewhere within the Seafarer mall. One of those persons, Atherton's brother Alberto Howe, had expressed concern to the government's informant, Kevin Lowe, about a current narcotics investigation by law enforcement authorities. Also, Lowe's frequent contacts with Howe while attempting to negotiate and conduct cocaine transactions with Atherton indicated that Howe might be involved in the criminal activity. Furthermore, Howe had reason to know of the agents' ongoing search for the currency, since they had questioned Howe at the rear of the mall and tested currency that he was carrying with the portable ultraviolet light. Finally, it is of no little importance that $15,000 of taxpayers' money was in danger of disappearing.

Once the agents made a lawful entry, the buy money was clearly subject to lawful seizure, since it was sitting in "plain view" on a table in front of the door. *See United States v. Gomez,* 633 F.2d 999, 1008 (2d Cir.1980), *cert. denied,* 450 U.S. 994, 101 S.Ct. 1695, 68 L.Ed.2d 194 (1981); *see also Katz v. Morgenthau,* 892 F.2d 20, 23 (2d Cir.1989) (per curiam) (dictum). Accordingly, we decline to address Atherton's challenge to the validity of the subsequently issued warrant.

B. *Evidentiary Issues.*

■ Atherton contends that the district court erroneously excluded evidence of drug activity involving Lowe, the government informant and witness. Atherton argues that testimony regarding Lowe's activity evidenced Lowe's motiva-tion to cooperate with, and his bias in favor of, the government. It is true that when evidence of a witness' prior misconduct is properly offered to show bias, that evidence "is not limited by the strictures of Rule 608(b)." *United States v. Schwab,* 886 F.2d 509, 511 (2d Cir.1989) (citing *United States v. James,* 609 F.2d 36, 45–46 (2d Cir.1979), *cert. denied,* 445 U.S. 905, 100 S.Ct. 1082, 63 L.Ed.2d 321 (1980)), *cert. denied,* —— U.S. ——, 110 S.Ct. 1136, 107 L.Ed.2d 1041 (1990). We agree with the government, however, that the district court could properly conclude that this testimony was not probative of bias, and was therefore appropriately excluded pursuant to Fed.R.Evid. 608(b). Rule 608(b) provides in pertinent part:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, ... may not be proved by extrinsic evidence.

Essentially, the question presented is whether the district court abused its discretion by refusing to find the proffered testimony to be sufficiently probative of Lowe's asserted bias in favor of the government to warrant its admission into evidence. *See United States v. Abel,* 469 U.S. 45, 54, 105 S.Ct. 465, 470, 83 L.Ed.2d 450 (1984) ("A district court is accorded a wide discretion in determining the admissibility of evidence under the Federal Rules."). We perceive no abuse of discretion here.

■ Atherton proffered a witness who testified, out of the presence of the jury, that Lowe had purchased and used illegal drugs during the period that he was acting as a government informant. In a limited sense, *any* illegal conduct of a government witness can be considered probative of bias, on the theory that the witness is likely to curry the favor of government attorneys in order to avoid prosecution. The probative value of such evidence, however, depends in large measure on some showing that the government was contemplating prosecution, or at least was aware, of the illegality. *Compare United States v. James,* 609 F.2d at 45–46 & n. 11 (error to exclude FBI reports and testimony of federal prosecutor regarding criminal prosecu-

tion of government witness pursuant to rule 608(b) where relevant to bias, although perhaps excludable under rule 403), *with United States v. Capozzi*, 883 F.2d 608, 616 (8th Cir.1989) (extrinsic evidence excludable under rule 608(b) where record "reveals no evidence of any arrangement or deal between the government and [its witness]"), *cert. denied,* — U.S. ——, 110 S.Ct. 1947, 109 L.Ed.2d 310 (1990); *United States v. Lamp*, 779 F.2d 1088, 1096 (5th Cir.) (characterizing defendant's bias theory as "far-fetched" where "the evidence presents no reason to suppose that [the government witness] thought the authorities were investigating him" and "does not suggest an awareness by any law enforcement agency of the [criminal conduct]"), *cert. denied*, 476 U.S. 1144, 106 S.Ct. 2255, 90 L.Ed.2d 700, 477 U.S. 908, 106 S.Ct. 3283, 91 L.Ed.2d 572 (1986); *United States v. Corbin*, 734 F.2d 643, 655 (11th Cir.1984) (rejecting testimony offered to show bias because "no evidence in the proffer or elsewhere in the record indicates that [the government witness] had reason to believe that his arrangement with the government would immunize him from prosecution"); *and United States v. Noti*, 731 F.2d 610, 612–13 (9th Cir.1984) (district court properly ruled that evidence of government witness' drug use went only to credibility where there was no evidence that witness cooperated to gain lenient treatment or defer an investigation).

Atherton has failed to connect Lowe's alleged drug use to the relationship between Lowe and the government. The proffered testimony showed only drug use, as distinguished from distribution, by Lowe, despite trial counsel's claim that he had evidence of distribution, and there was no showing of any government awareness of that use or any danger to Lowe that he would be prosecuted because of it. Accordingly, the district court could properly determine that the proffered testimony was probative only of Lowe's general character for truthfulness, and that such extrinsic evidence was therefore inadmissible under rule 608(b).

■ Finally, we reject Atherton's contention that the government should not have been permitted to impeach his credibility on its rebuttal case through evidence that was barred from its case in chief. Atherton argues that such impeachment was improper because the subject of his possession of drug paraphernalia in his office was broached only on cross, not direct, examination. In *United States v. Havens*, 446 U.S. 620, 100 S.Ct. 1912, 64 L.Ed.2d 559 (1980), however, the Supreme Court held that suppressed evidence may be used to impeach the testimony of a defendant elicited on proper cross-examination:

> In terms of impeaching a defendant's seemingly false statements with his prior inconsistent utterances or with other reliable evidence available to the government, we see no difference of constitutional magnitude between the defendant's statements on direct examination and his answers to questions put to him on cross-examination that are plainly within the scope of the defendant's direct examination. Without this opportunity, the normal function of cross-examination would be severely impeded.

*Id.* at 627, 100 S.Ct. at 1916.

The rebuttal evidence was therefore properly allowed. Indeed, the following testimony on Atherton's direct examination arguably opened the door to the government's rebuttal:

> Q ... Mr. Pierce said ... that you opened a desk drawer and ... there were two small packets of powder in the desk drawer, and ... that you used some cocaine from one of the packets. Did you, in fact, use any cocaine with Tom Pierce during that period of time, if you recall?
>
> A Had I taken cocaine out my desk drawer? No. *My office has been entered twice by the Government, and I'm sure other times, and they've never found anything in my office.* Did we do cocaine? Yes, and that was from the packet that Tom Pierce had.

Emphasis added.

### Conclusion

The judgment of conviction is affirmed.

FEINBERG, *Circuit Judge* (dissenting):

I do not agree with that portion of the majority opinion that approves of the district court's finding "that exigent circumstances justified the initial entry into apartment number two." Based on this finding, the district court held that the seizure of the $15,000 in marked buy money was justified because the money was "in plain view" on a table within the apartment when the agents lawfully entered, and the court consequently denied Atherton's motion to suppress this important evidence. I believe that this was error, and I therefore cannot join in the affirmance of the judgment of conviction. As explained below, however, the evidence may nevertheless have been admissible on another theory. Because determination of that issue requires further findings by the trial court, I would remand.

With regard to the finding of exigent circumstances, the majority is correct that in recent years we have frequently found that exigent circumstances justified warrantless entries when "law enforcement officers reasonably believed that immediate access to the premises was necessary to prevent the loss of evidence." However, the cases relied upon by the majority make clear that in such circumstances the law enforcement officers must reasonably believe "that additional evidence was present in the apartment *and* that there might be someone there who could destroy it." See, e.g., *United States v. Vasquez*, 638 F.2d 507, 532 (2d Cir.1980) (emphasis added), cert. denied, 450 U.S. 970, 101 S.Ct. 1490, 67 L.Ed.2d 620 (1981). The second of those two conditions was not satisfied here.

Confidential informant Lowe told the agents that he had given defendant Atherton the $15,000 marked money in exchange for cocaine in a vacant apartment, and the agents in fact heard the details of the transaction through the concealed transmitter Lowe was wearing. Atherton was arrested after he left the vacant apartment. When the agents announced their presence at the door of apartment two, they received no response. The record is devoid of any indication that the agents heard noises indicating someone's presence or had other reasons to believe that someone was in the apartment.

The majority states that the agents "considered it imperative to locate the 'buy' money before it could be removed." Granting that, it is still hard to see what the exigent circumstances were that prevented the agents from getting a search warrant. If the money was in the vacant apartment, as the "traces of powder on the door" indicated it probably was, the money was not going to walk away. The majority apparently relies on the agents' knowledge that "two persons who had previously been charged with cocaine trafficking were somewhere within the Seafarer mall." But the agents had no reason to believe that either was in the vacant apartment. In fact, they had just questioned one of them (Howe) in another part of the mall. On the basis of the information they had, the agents could have easily posted a guard and obtained a warrant. In short, there was no persuasive justification for a warrantless entry, and the district court's finding of exigent circumstances was clearly erroneous.

However, as already indicated, the $15,000 marked money may nevertheless have been admissible evidence on an alternate ground. The government argues that the evidence would have been found in any event during the execution of the search warrant for the apartment shortly afterwards. Under *Murray v. United States*, 487 U.S. 533, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988), the government may be able to show that the warrant was obtained "on the basis of information wholly unconnected with the initial entry." *Id.* at 535, 108 S.Ct. at 2532. This is a matter on which the district court would have to make appropriate findings, supported by the evidence before it. I would remand for that purpose.