UNITED STATES of America

v.

**Jose Manuel CABASSA, Defendant.**

**No. 91 Cr. 537 (RPP).**

United States District Court, S.D. New York.

Jan. 9, 1992.

Otto Obermaier, U.S. Atty., S.D.N.Y., New York City by Kenneth L. Wainstein, Asst. U.S. Atty., for U.S.

Goldberger & Dubin, P.C., New York City by Lee H. Gross, for defendant.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

Defendant Jose Manuel Cabassa was arrested on June 19, 1991 and subsequently charged in a two-count indictment with: (1) possession with intent to distribute over 500 grams of a mixture containing a detectable amount of cocaine within 1000 feet of a school; and (2) unlawful use and carrying of firearms during and in relation to a drug trafficking crime. Cabassa moves for an order requiring: (1) disclosure of the identity of a confidential informant; (2) the suppression of all evidence seized in violation of the Fourth Amendment and all fruits thereof, including, but not limited to, any and all statements or admissions made by the Defendant; (3) the suppression of all statements made in violation of the Fifth and Sixth Amendments and all fruits thereof; and (4) the suppression of any evidence that was derived from any prior illegal seizures of evidence or statements.

On December 2, 1991, Cabassa executed an affidavit in support of parts (2) and (3) of his motion, and the Court held an evidentiary hearing on those parts of the motion on December 10, 1991. On December 23, 1991, Defendant filed a post-hearing memorandum in support of his motion to suppress evidence, and he filed a corrected copy on December 27, 1991.

At the hearing, the Government established by a preponderance of the evidence that in the Spring of 1991 a confidential informant ("CI") operating under the supervision of Special Agent James McCormick, a Drug Enforcement Agency ("DEA") agent assigned to the Westchester Drug Enforcement Task Force, told Agent McCormick that a man called "Man-

ny" was a supplier of cocaine. The CI had supplied reliable information in the past, and this information had resulted in five investigations involving the arrest of over ten defendants and the seizure of at least 11 kilograms of heroin.

Agent McCormick also testified that the CI reported that he or she had had several conversations with Manny about buying cocaine and that Manny had given him or her a telephone number (212–876–3941) at which Manny could be reached. On June 18, 1991, the CI reported to Agent McCormick that in a conversation on the telephone Manny had told the CI that he would sell him or her a kilogram of cocaine at his apartment at 158 East 119th Street, that he was going on vacation soon, and that he wanted to sell the cocaine before he left on vacation. The CI also told Agent McCormick that he or she had visited Manny at his apartment on 119th Street, that Manny had firearms in his apartment, and that Manny was "a shooter." The CI provided a general description of Manny and said that Manny had another apartment on East 120th Street for which the CI did not have an address.

DEA agents conducted a subscriber check on the telephone number which the CI claimed belonged to "Manny." The check revealed that the telephone number was subscribed to a female name and provided the address: 158 East 119th Street, Apartment 4F, New York, New York ("the 119th Street apartment"). Having confirmed some of the information received from the CI, two DEA agents, Eileen Dinnan and Mark Nemier, were dispatched in the early afternoon of June 19, 1991 to the United States Attorney's Office to prepare an application for a search warrant for the 119th Street apartment. Eight or nine agents, including Agent McCormick, were dispatched to stake out the building at 158 East 119th Street while awaiting the issuance of the search warrant.

While Agent Dinnan was at the United States Attorney's Office preparing her affidavit in support of the search warrant, Agent McCormick became apprehensive. Because the agents who were assigned to the stake-out were white and had with them DEA vests and identification, he feared that their prolonged presence in that inner city area would arouse suspicion and that Manny would be alerted. The apartment building being watched was a fairly large one, and the agents observed a number of persons carrying packages enter and exit it. Agent McCormick believed the building had more than one exit, and he was not sure that Manny could be identified among those leaving. He also understood from the CI that Manny was leaving on vacation and was anxious to dispose of the cocaine.

At about 3 p.m., having determined that it would be unwise to wait longer for the search warrant, Agent McCormick and other agents approached the entrance to 158 East 119th street. The agents met Roland White, the building's superintendent, in the building's entrance, told him they were getting a search warrant, and asked him where in the building Manny lived. Mr. White stated that Manny lived in Apartment 4F, and he accompanied the agents to the apartment door. On instructions from the agents, Mr. White knocked on the door, and, upon Manny's inquiry of "Who's there," Mr. White announced himself. Cabassa opened the door, and the agents, with guns drawn, forced the door open wider, subdued Cabassa, and handcuffed him. During a security sweep of the apartment, the agents found in plain view: narcotics for personal use, stamps, glassine envelopes, ammunition, and loaded clips for automatic weapons.

Agent McCormick stated that thereafter, around 3:25 p.m., Cabassa consented to a search of the apartment and opened one of two safes which contained jewelry and about $18,000 in cash. In the course of the search, the agents recovered nine guns, a silencer, drug paraphernalia, stamps, drug records, ammunition for the various weapons, and approximately one kilogram of cocaine. Cabassa also took the agents to an apartment at 438 East 120th Street, New York, New York ("the 120th Street apartment") where five more guns were seized.

In his supporting affidavit, Cabassa states that the agents had no search warrant, obtained access to his apartment by trick and deceit, did not give him any *Miranda* warnings, and did not permit him access to an attorney even though he requested one. He also states that he did not consent to a search of any kind. Agent McCormick testified that Cabassa's consent to the search was oral, and that his consent was not in writing because the agents did not have any "consent to search" forms with them at 158 East 119th Street. It is not disputed that later, at the DEA office, Cabassa was asked to sign consent to search forms and refused.

Cabassa called Mr. White to testify as to the manner in which the agents gained access to the 119th Street apartment. He also called his nephew, George Encinarcio, to corroborate that Cabassa was not going on vacation until July 11, 1991. Mr. Encinarcio testified that when he arrived at the 119th Street apartment at 3:50 p.m., the apartment was messed up as a result of the search. He also testified that he overheard Agent McCormick's conversations on the telephone and that Agent McCormick was concerned that he would have to release Cabassa because the agents had entered the apartment without a search warrant.

## DISCUSSION

## I. DISCLOSURE OF THE IDENTITY OF THE CONFIDENTIAL INFORMANT

■ The disclosure of the identity or address of a confidential informant is not required unless the defendant makes a showing that the informant's potential testimony is material to the defense. *United States v. Saa*, 859 F.2d 1067, 1073 (2d Cir.), *cert. denied*, 489 U.S. 1089, 109 S.Ct. 1555, 103 L.Ed.2d 858 (1989), *citing Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). Where a defendant fails to make such a showing, disclosure need not be ordered. *Saa*, 859 F.2d at 1073. *See also United States v. Jimenez*, 789 F.2d 167 (2d Cir.1986).

Cabassa has not shown that the CI's potential testimony is material to his defense. If such a showing is made, then the Court will provide an opportunity for Defendant's counsel to meet with the CI to seek an interview. *Saa*, 859 F.2d at 1074–75. In any event, if the Government calls the CI as a witness at trial, the defendant will be provided ample opportunity to examine any statements made or prior testimony given by the CI pursuant to 18 U.S.C. § 3500(b).

## II. PHYSICAL EVIDENCE SEIZED IN CONNECTION WITH THE SEARCH OF THE 119TH STREET APARTMENT

### A. Exigent Circumstances

■ Cabassa argues that there were no exigent circumstances which justified a warrantless search of the 119th Street apartment. A warrantless entry is justified where law enforcement officers have a reasonable belief that there are persons inside a residence who might destroy evidence. *United States v. Schaper*, 903 F.2d 891, 894 (2d Cir.1990). The test for determining whether a warrantless entry is justified by exigent circumstances is an objective one, and the agent's belief in the existence of such circumstances must be objectively reasonable. *Id.* *See also United States v. Miles*, 889 F.2d 382, 383 (2d Cir. 1989).

■ In this case, the Government has not shown by a preponderance of the evidence that there were exigent circumstances justifying entry of the 119th Street apartment before the search warrant was issued. Agent McCormick's apprehension does not appear to have been sufficiently well founded. He had no evidence that Cabassa had been alerted to the agents' presence in the neighborhood or that their presence was arousing suspicion. Until Mr. White confirmed that Manny was at home, Agent McCormick was not even sure that Cabassa was in the apartment. Nor was Cabassa's planned vacation an adequate reason to take such immediate action. McCormick had no specific information as to when the vacation would begin or that a sale to someone other than the CI was planned to take place prior to the

vacation. Accordingly, Agent McCormick did not have sufficient reason to believe that contraband would be disposed of or removed from the 119th Street apartment at or around the time of the search. Agent McCormick's actions were perhaps understandable and were taken in good faith. The evidence presented, however, does not indicate that there were the exigent circumstances necessary to justify the warrantless entry.

### B. Inevitable Discovery

The Government bases its opposition to Cabassa's motion to suppress on the "inevitable discovery" doctrine enunciated in *Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). In *Nix*, the Supreme Court held that evidence concerning the location and condition of the body of a girl whom the defendant had murdered was admissible at his retrial even though the police were led to the body through admissions elicited during an unconstitutional custodial interrogation. The Court ruled that the discovery of the body was inevitable even without the defendant's admissions because a search for the body was then in progress, and the search party was close to the location of the body. The Court stated that an exception to the exclusionary rule applies to permit introduction of evidence initially detected as the result of unlawful government coercion, "[i]f the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means." *Nix*, 467 U.S. at 444, 104 S.Ct. at 2509.

■ The inevitable discovery doctrine applies not only to evidence seized in violation of the Fifth Amendment, but also to that obtained as the result of Fourth Amendment violations. *United States v. White-*

*horn*, 829 F.2d 1225 (2d Cir.1987), *cert. denied*, 487 U.S. 1237, 108 S.Ct. 2907, 101 L.Ed.2d 939 (1988). In *Whitehorn*, 829 F.2d at 1231, the Second Circuit permitted the admission of evidence seized during a warrantless "bomb sweep" conducted in violation of the Fourth Amendment. Because F.B.I. agents had begun the warrant application process and had overwhelming probable cause to search before the bomb sweep took place, it was inevitable that a warrant would issue and that the illegally seized evidence would have been discovered.

■ The inevitable discovery exception to the exclusionary rule applies to the instant case. It is unrebutted that Agent Dinnan was in the United States Attorney's Office finalizing her affidavit when the search was conducted. At around 3:30 p.m., Agent Nemier called on a mobile phone to check information in the affidavit and was informed by one of the agents at 158 East 119th Street that the agents had entered the apartment, conducted a security sweep, and were conducting a consensual search. The Assistant U.S. Attorney then initialed the draft affidavit and wrote the time and date on it (Government Exhibit 1). The effort to obtain a search warrant was then abandoned.

The draft affidavit, which was to be presented to a Magistrate for a search warrant that afternoon, supports a finding of probable cause for a detailed search of the 119th Street apartment for one kilogram of cocaine and for the other items listed in paragraph 9[1] of that draft affidavit. The appropriate inquiry, however, is not whether the affidavit as drafted demonstrated probable cause, but whether, at the time of the search, the agents were in possession of sufficient reliable information to provide the Magistrate with grounds for a finding

---

**1.** Paragraph 9 states:

Based upon the foregoing, there is probable cause to believe that on the premises known as 158 E. 119th Street, Apartment 4F, New York, New York, there are concealed monies, safes, safe deposit keys, financial records, notes, diaries and calendars; narcotics and narcotics paraphernalia (including scales and packaging materials); weapons and ammunition; paging devices and mobile and cellular telephones; and other property, documents and things that constitute evidence of the commission of, or are designed or intended as a means of the commission of the violation of, or are contraband or the fruits of the violation of, the federal narcotics laws, including, but not limited to, Title 21 United States Code, Sections 812, 841, and 846.

of probable cause. *Calamia v. New York,* 879 F.2d 1025, 1032 (2d Cir.1989), *citing Illinois v. Andreas,* 463 U.S. 765, 771, n. 5, 103 S.Ct. 3319, 3324, n. 5, 77 L.Ed.2d 1003 (1983) (where law enforcement officers are cooperating in an investigation, the knowledge of one is presumed shared by all). At the time of the search, Agent McCormick was aware that the CI, who was of known reliability, had been in the 119th Street apartment, had seen guns in the apartment, had discussed cocaine purchases with Manny, and had been told by Manny that he had a kilogram of cocaine in the 119th Street apartment as of the day before the search and that Manny would sell the cocaine to the CI. Agent McCormick was prepared to elaborate on the draft affidavit if the Magistrate had requested more detailed information. Because the agents were in possession of sufficient information to support a finding of probable cause, and because the agents were clearly deployed to execute the warrant once it issued, the inevitable discovery doctrine applies.

### III. STATEMENTS AND ADMISSIONS MADE IN CONNECTION WITH THE SEARCH OF THE 119TH STREET APARTMENT

Cabassa's Fifth Amendment challenge to statements and admissions made in connection with the search of the 119th Street apartment is a separate and distinct issue from his Fourth Amendment challenge to the evidence seized there. *See, e.g., Brown v. Illinois,* 422 U.S. 590, 601, 95 S.Ct. 2254, 2260–61, 45 L.Ed.2d 416 (1975). Accordingly, even though the seizure of evidence at the 119th Street apartment was proper, Cabassa's Fifth Amendment challenge must be addressed independently.

■ Agent McCormick testified that immediately upon entering the 119th Street apartment, the agents subdued Cabassa and placed him in handcuffs. In his affidavit filed in support of this motion, and in his testimony at the hearing, Cabassa stat-

ed that at no time was he ever told of his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The Government has presented no evidence to contradict this assertion. It appears, therefore, that as soon as the agents entered the 119th Street apartment, Cabassa was placed in custodial situation and subjected to interrogation within the meaning of *Miranda.* Accordingly, the agents' failure to advise Cabassa of his rights, including his right to remain silent, requires the suppression of any and all statements or admissions made by Cabassa after the agents entered his apartment.

### IV. PHYSICAL EVIDENCE SEIZED AND STATEMENTS AND OMISSIONS MADE IN CONNECTION WITH THE SEARCH OF THE 120TH STREET APARTMENT

■ A consensual warrantless search comports with the Fourth Amendment only if the consent was given voluntarily. Whether a defendant's consent was voluntary or the product of duress or coercion is to be determined from the totality of the circumstances. *Schneckloth v. Bustamonte,* 412 U.S. 218, 227, 93 S.Ct. 2041, 2047–48, 36 L.Ed.2d 854 (1973). *See also United States v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). The burden to show the voluntariness of consent falls on the Government. *Schneckloth,* 412 U.S. at 222, 93 S.Ct. at 2045.

■ Agent McCormick testified that the search of both the 119th Street apartment and the 120th Street apartment was done with Cabassa's consent. In his supporting affidavit and testimony given at the hearing, however, Cabassa stated that at no time did he consent to the search of either apartment.[2] This assertion is undercut by Cabassa's own admissions that he told the agents the combination to the safe containing the jewelry and the $18,000, that he accompanied the agents to the 120th Street apartment, and that he opened the door to the 120th Street apartment with his key.

---

**2.** Because the search of the 119th Street apartment was permissible pursuant to the inevitable discovery doctrine, only the issue of consent as

to the search of the 120th Street apartment needs be addressed.

Cabassa's explanation for his trip to the 120th Street apartment is that Agent McCormick had previously testified that the CI had told him the address of the second apartment. The record is to the contrary. Transcript of Hearing of December 10, 1991 at 12–13. Accordingly, the Court finds that Cabassa did consent to the search of the 120th Street apartment. That consent, however, was not obtained voluntarily because the circumstances indicate that the defendant was under duress at the time he gave his consent, and because the defendant did not receive a *Miranda* warning prior to giving his consent. Because the Government has not presented evidence showing that any other exception to the warrant requirement applies to the search of the 120th Street apartment or to the contraband found there, the evidence seized there, as well as any statements or admissions made by Cabassa in connection with that search, is suppressed.

## V. PRIOR SEARCHES OF THE PREMISES

No grounds have been shown for Defendant's motion to suppress evidence seized in prior searches of the premises. Accordingly, this part of Defendant's motion is denied.

## CONCLUSION

Defendant's motion for an order disclosing the identity of the Confidential Informant is denied. Defendant's motion to suppress physical evidence seized in connection with the search of Apartment 4F at 158 East 119th Street, New York, New York, is denied. Defendant's motion to suppress statements and admissions made by the Defendant in connection with the search of Apartment 4F at 158 East 119th Street, New York, New York, is granted. Defendant's motion to suppress evidence seized and statements and admissions made by the Defendant in connection with the search of 238 East 120th Street, New York, New York is granted. Defendant's motion to suppress evidence seized in prior searches of the premises is denied.

The parties are ordered to attend a conference on January 13, 1992 at 9 a.m. in Courtroom 302 to set a date in the near future for trial.

IT IS SO ORDERED.